Sydney Lester - February 11, 2021

```
1              UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF COLUMBIA

3

4      _____
                                      )
5      QING LU,                       )
                                      )
6                   Plaintiff,        )
                                      )
7          vs.                        )    Civil Action No.
                                      )    1:20-cv-00461-APM
8      DISTRICT OF COLUMBIA, et al.   )
                                      )
9                   Defendants.       )
                                      )
10     _____)

11

12

13

14        VIRTUAL DEPOSITION OF SYDNEY LESTER

15          Thursday, February 11, 2021

16                  2:02 p.m.

17

18

19

20

21

22     Reported by:  Cappy Hallock, RPR, CRR
```

Sydney Lester - February 11, 2021

1

2            Virtual Deposition of SYDNEY LESTER,

3       held via WebEx Remote.

4

5

6            Pursuant to Notice, the Virtual

7       Deposition of SYDNEY LESTER was taken commencing

8       at 2:02 p.m. on Thursday, February 11, 2021 before

9       Cappy Hallock, Registered Professional Reporter,

10      Certified Realtime Reporter, and Notary Public in

11      and for the State of Maryland.

12

13

14

15

16

17

18

19

20

21

22

Sydney Lester - February 11, 2021

```
 1      APPEARANCES:

 2

 3          ON BEHALF OF PLAINTIFF:

 4              DAVID R. SCHLEICHER, ESQUIRE

 5              Schleicher Law Firm, PLLC

 6              1629 K Street, NW, Suite 300

 7              Washington, D.C. 20006

 8              202-540-9950

 9              david@gov.law

10

11          ON BEHALF OF DEFENDANTS:

12              MATTHEW BLECHER, ESQUIRE

13              Assistant Attorney General

14              Civil Litigation Division, Section III

15              Office of the Attorney General for the

16              District of Columbia

17              400 6th Street, NW

18              Washington, D.C. 20001

19              202-442-9774 (P)   202-730-0586 (F)

20              matthew.blecher@dc.gov

21                  -and-

22
```

Sydney Lester - February 11, 2021

```
 1      APPEARANCES:   (CONTINUED)

 2

 3              ADAM P. DANIEL, ESQUIRE

 4              Assistant Attorney General

 5              Civil Litigation Division, Section III

 6              Office of the Attorney General of the

 7              District of Columbia

 8              400 6th Street, NW

 9              Washington, D.C. 20001

10              202-442-7272 (P)   202-400-2675 (F)

11              adam.daniel@dc.gov

12

13

14

15

16

17

18      Also Present:  Luchi Lu

19               Qing Lu

20               Amir Azadniv

21      Reporter:  Cappy Hallock, RPR, CRR

22
```

Sydney Lester - February 11, 2021

```
 1                    I N D E X

 2              Deposition of SYDNEY LESTER

 3                  February 11, 2021

 4

 5     EXAMINATION BY:                      PAGE

 6           Mr. Schleicher                 11

 7           Mr. Daniel                     55

 8

 9                    -o0o-

10

11                 E X H I B I T S

12

13     LESTER                              PAGE

14     Exhibit 8   8-31-16 e-mail, Lester to Lu    48

15     Exhibit 9   2-11-21 e-mail, Schleicher to   11

16                 Daniel, et al.

17

18                    -o0o-

19

20

21

22
```

GregoryEdwards, LLC |  Worldwide Court Reporting
GregoryEdwards.com |  866-4Team GE

Sydney Lester - February 11, 2021

```
 1                  P R O C E E D I N G S
 2                     - - - - - -
 3            MR. DANIEL:  I appreciate your
 4      concerns.  Where we are coming from here is that
 5      the witnesses we have had so far are relatively
 6      important government officials.  There is an
 7      argument that they are up the chain on the apex
 8      analysis.  What we have faced and what I tried to
 9      address when we went off the record at the
10      beginning of Ms. Crowe's testimony is that
11      questions are being asked that are not relevant or
12      not tied to the discipline that is at issue in
13      this case.
14            I mean, I will be cognizant of where
15      you are coming from on that.  We are aware of the
16      law on relevance but we do need to be able to be
17      very specific about what is being discussed, how
18      it's being discussed, and what impact that has on
19      the case at hand.
20            You're asking questions about one
21      issue, or treating something that is part of one
22      issue that is a separate stream of evidence.  So
```

Sydney Lester - February 11, 2021

1      that's just where we are coming from.  We will be

2      cognizant.  We are tying to make it go smoothly.

3      Again, this was the same issue that I tried to

4      address before you got into or at the beginning of

5      getting into the April 30th e-mail and the April

6      22nd letter with Ms. Crowe.  I think those are

7      both contained in Exhibit 4.

8                  If we can work something out, again, I

9      will be cognizant, but we do need to keep things

10     tight to the record and what the evidence is.

11                 MR. SCHLEICHER:  Okay.  Can you

12     explain a little more or how do you suggest we

13     resolve it, or how I would avoid the hitting on

14     the subject areas that are of concern?

15                 MR. DANIEL:  Sure.  When you were

16     asking Ms. Crowe about -- this obviously will not

17     apply to Mr. Lester.  Mr. Lester is in the

18     decision chain that this matter is to.  He's

19     coming in to describe what happened in the

20     disciplinary chain that led to the eight-day

21     suspension.

22                 Ms. Crowe is not part of that process.

Sydney Lester - February 11, 2021

1    Her letters, Mr. Whitescarver testified at the end

2    of his testimony this morning that her letters

3    are, were not part of his decision.  What you're

4    talking about there is a separate response.  That

5    is the Agency's response to the content of what

6    Ms. Lu had said to the director on February 5th

7    and in the February 6th e-mail.

8            It's another of -- and this is what I

9    expected to have come out.  It's another of the

10   many responses she received telling her your

11   allegations have been investigated, they have been

12   found not to have merit.  It's a separate response

13   from the discipline that came down through

14   Mr. Lester and Mr. Whitescarver.  And I don't know

15   of any evidentiary basis to cross title those.

16           Does that explain where we are coming

17   from there?

18           MR. SCHLEICHER:  I guess I have to ask

19   the questions to see if there was, or did have to

20   ask those questions to see if there was a

21   connection between the two and, you know, it's

22   fine that she said there was not.  But I had to

Sydney Lester - February 11, 2021

1    ask to know whether there was a connection since

2    it was the same subject matter.

3             MR. DANIEL:  And I appreciate that.

4    And the connection part is not where we are coming

5    from.  It is then asking for her commentary on

6    what she thinks of the disciplinary decision

7    that's not, one, isn't actually the document in

8    front of her; and two, isn't something she was

9    involved with.

10             MR. SCHLEICHER:  Um-hmm.

11             MR. DANIEL:  So we will be

12    cognizant -- I think we can work a little more

13    smoothly with Mr. Lester here.

14             MR. SCHLEICHER:  And the remaining

15    issues on Ms. Crowe are related to telework, and I

16    think on that subject I had asked is she the most

17    appropriate person to, or is she an appropriate

18    person to speak to telework or is there somebody

19    else and you all had said, no, we could go ahead

20    with her.

21             MR. DANIEL:  We are going ahead with

22    her but we still didn't get a 30(b)(6) notice.

Sydney Lester - February 11, 2021

1    What we are dealing with is her involvement in

2    Ms. Lu's telework and, again, how she has

3    experienced dealing with telework.  I'm not going

4    to be raising the same objections I was to that

5    but were being raised to a separate letter.  I

6    don't disagree that you have the right to explore

7    that with her.

8              The telework policy, the e-mails, her

9    interactions, her involvement in that, we are not

10   going to be objecting to -- there might be a

11   question that we ask for some clarification on but

12   objecting to the content and the relevance of that

13   won't be an issue.

14             MR. SCHLEICHER:  Okay.

15             And I agree we are unlikely to have

16   the same issues with Mr. Lester so that's a

17   positive thing.

18             MR. DANIEL:  Is he in the waiting room

19   yet?

20             MR. SCHLEICHER:  Okay.  Let me look.

21             (Discussion off the record.)

22             MR. SCHLEICHER:  Did we note that we

Sydney Lester - February 11, 2021

```
1    wanted this Exhibit 9 included for the,

2    Plaintiff's Exhibit 9 for the discussion?

3              MR. DANIEL:  Yes, that's fine.

4              (Discussion off the record.)

5              (Recess taken-- 2:16 p.m.)

6              (After recess -- 2:33 p.m.)

7              (Plaintiff's Deposition Exhibit No. 9

8    was marked for identification.)

9    WHEREUPON,

10                  SYDNEY LESTER,

11         A Witness called for examination, having

12   been first duly sworn, was examined and testified

13   as follows:

14                  EXAMINATION

15   BY MR. SCHLEICHER:

16         Q    Mr. Lester, I'm David Schleicher.  I'm

17   Ms. Lu's attorney and I will be asking you some

18   questions related to her case.  If I ask you

19   something that doesn't make sense or that you

20   don't hear, can you let me know?

21         A    Sure thing.

22         Q    Okay.
```

Sydney Lester — February 11, 2021

Page 26

1       Q      What harm did Ms. Lu's actions cause

2    to the District of Columbia government in your

3    observation?

4              MR. DANIEL:  Objection, foundation.

5       Q      Let me ask this then.

6              Do you believe that Ms. Lu's actions

7    caused harm to the District of Columbia

8    government?

9       A      In general.  Is that in general?

10      Q      In any way.

11      A      I don't know.

12      Q      Do you believe that Ms. Lu's actions

13   caused harm to DCRA?

14      A      Well, it caused tension in the

15   workplace, if that's what you're talking about.

16      Q      Okay.  Any other harm other than

17   tension in the workplace?

18      A      Not that I'm aware of.

19      Q      And when you say tension in the

20   workplace are you referring to the relationship

21   between SB and Ms. Lu?

22      A      Yes.

Sydney Lester - February 11, 2021

Page 27

1          Q      Is SB someone who has also

2    historically received very positive performance

3    ratings under your leadership?

4          A      Yes.

5          Q      And did his performance, as reflected

6    in the yearly evaluations, show any significant

7    dropoff when he was having this tension with

8    Ms. Lu?

9          A      I don't remember but I would expect

10   that it would be hard as Ms. Lu.

11         Q      Okay.

12                And what I'm asking is if you're aware

13   of any indication in his annual evaluation that

14   the relationship with Ms. Lu had deteriorated so

15   much that he was unable to continue to perform his

16   job at a high level.

17         A      No.  I didn't see that.

18         Q      Do you have any reason to believe that

19   Ms. Lu would have ended up suspended if she had

20   not made reports about believing SB engaged in

21   fraudulently obtaining leave?

22                MR. DANIEL:  Objection, speculation.

Sydney Lester - February 11, 2021

Page 28

1           You can answer.

2           You can answer.

3      A    Can you repeat the question?

4      Q    I'm asking are you aware of any reason

5    to believe that Ms. Lu would have ended up

6    suspended if she had never reported her belief

7    that SB engaged in leave fraud.

8      A    I can't say.

9      Q    Well, does that mean that you're not

10   aware of any reason to believe that?

11     A    I'm not aware.

12     Q    I'm sorry, what was that?

13     A    I am not aware.

14     Q    Oh, okay.

15          Did you form an opinion about whether

16   or not Ms. Lu intentionally lied about SB versus,

17   say, she was simply mistaken?

18     A    I can't say what her intent was but

19   she continued even after she was told that what

20   she was saying was not so.

21     Q    Okay.

22          Do you know if she was ever shown any

Sydney Lester - February 11, 2021

1    documents that would have proven that SB's claim

2    for leave was legitimate?

3         A    Do I know that what?

4         Q    Well, let me ask it this way.  Did you

5    ever see an official document like a birth

6    certificate or something else from a government

7    agency that persuaded you that his claim for leave

8    was not fraudulent?

9         A    He did not submit anything to me so I

10   would not have seen anything.

11        Q    So your conclusion that his leave was

12   not fraudulent was based on what other people had

13   told you; is that right?

14        A    What the HR people and the folks who

15   are supposed to be looking into these things, yes,

16   based on what they provide, yes.

17        Q    Did you believe that Ms. Lu's

18   reporting of SB was improper from the start or was

19   it okay for a while but at some point it then

20   became improper?

21        A    No.  I did not judge.

22        Q    On a scale of 1 to 100 with 100 being

Sydney Lester - February 11, 2021

1    absolutely certain and 1 being you have no idea,

2    how certain are you that SB, his obtaining

3    parental leave was honest and accurate?

4         A    Is 100 that I am sure?

5         Q    Yes.

6         A    So you're asking me to guess, right?

7         Q    No, I'm asking.  If you don't know

8    whether or not it's accurate you can certainly say

9    that, but I'm asking you if you have an opinion

10   about whether or not he committed fraud, and I

11   want to find out how certain you are about that.

12            MR. DANIEL:  I've lost track of the

13   question, David.  Can you put it to him again.

14            MR. SCHLEICHER:  Sure.

15        Q    On a scale of zero to 100, with 100

16   being absolutely certain and zero meaning that you

17   have no idea, how certain are you that SB did not

18   fraudulently obtain paid parental leave benefits?

19        A    I would say I'm not certain.

20        Q    Okay.

21            What is the single most convincing

22   piece of evidence for you that he did make an

Sydney Lester - February 11, 2021

Page 31

1    honest and accurate request for paid parental

2    leave?

3         A    When he got the approval by the HR

4    folks that has to deal with that kind of issue.

5         Q    Okay.

6              And do you know if HR did anything to

7    verify whether or not the documents SB submitted

8    were authentic?

9         A    I don't know how they operate.

10        Q    When do you think was the last, most

11   recent discussion that you had with SB about

12   Ms. Lu?

13        A    The last discussion?  I would say a

14   couple years ago.

15        Q    So since you proposed discipline has

16   SB complained at all about Ms. Lu?

17        A    I don't think so.

18        Q    Did you have a chance to read

19   Mr. Lawson's investigation of SB's complaints

20   about Ms. Lu?

21        A    You mean his investigation report?

22        Q    Yes.

Sydney Lester - February 11, 2021

1      A      Yes, I did.

2      Q      And was that the primary basis for

3   your decision to propose discipline, that it was

4   appropriate to propose discipline against Ms. Lu?

5      A      Yes, it was.

6      Q      Did you get a chance to meet with

7   Mr. Lawson also after he had prepared the Report

8   of Investigation for him to answer any questions

9   that you had about it?

10     A      I don't remember.  I don't think so.

11     Q      Who do you remember being the highest

12  ranking elected or management official who has

13  communicated to you about Ms. Lu's reporting about

14  SB?

15     A      I guess it would be the mayor.

16     Q      Okay, and what do you remember the

17  mayor communicating about Ms. Lu?

18     A      What do I remember what?

19     Q      What do you remember about the mayor

20  communicating about Ms. Lu?

21     A      I don't remember the -- what she

22  communicated.  I'm just -- your question was what.

Sydney Lester - February 11, 2021

1               Okay.  Can you hear me all right?  Can

2     you hear me all right?

3               Can you hear me now?

4               THE WITNESS:  Yes.

5     BY MR. SCHLEICHER:

6          Q     Okay.  I'm sorry.

7               So my question was what do you

8     consider to be the greatest danger posed by

9     conduct like that that Ms. Lu engaged in?

10              MR. DANIEL:  Objection as to vague.

11              But you can answer.

12         A     Danger?  Just harassment,

13    unpleasantness in the workplace.

14         Q     Harassment and bitterness in the

15    workplace?

16         A     I'm not sure, that's my guess.

17         Q     Okay.

18              Do you know if Melinda Bolling played

19    any role in Ms. Lu being investigated?

20         A     No, I don't know.

21         Q     When SB complained to you that Ms. Lu

22    was harassing him, did you have a chance to meet

Sydney Lester — February 11, 2021

1    with Ms. Lu to get her side of the story?

2          A    No, I did not meet with her.

3          Q    I'm sorry, what was that?

4          A    I did not meet with her.

5          Q    Okay.

6          A    I don't remember meeting with her.

7          Q    And is there a reason you didn't meet

8    with her on that subject?

9          A    Because -- no, she thought that she

10   should bring it up with HR.

11         Q    And was there a point at which you

12   tried a verbal counseling followed up with a

13   letter documenting that with Ms. Lu to address

14   what SB was complaining about?

15         A    No.  I did not go through that

16   process.  I told him to go to HR to have HR deal

17   with it.

18         Q    And do you know was there an office

19   that you would typically send someone to?  Is

20   there an Office of Human Rights that would

21   typically handle a harassment complaint in your

22   experience?

Sydney Lester - February 11, 2021

1          A     I couldn't say.

2          Q     What is your understanding of why the

3     final charge against Ms. Lu was misleading the

4     mayor rather than it being something like

5     insubordination or harassment?

6          A     I don't know if that was the final

7     charge.   I don't know what kind of charge it is.

8          Q     Okay, and I don't mean the final

9     charges in the decision but the final conduct that

10     you charged her with I understand was

11     dishonesty -- intentionally misleading her

12     supervisors or a supervisor; is that right?

13               MR. DANIEL:  Do we need to pull up the

14     exhibits?

15               MR. SCHLEICHER:  Yes.

16               MR. DANIEL:  Do you have the ability

17     to do it on your iPad or do you want me to send

18     them to him?

19               MR. SCHLEICHER:  Let's see.  I'm back

20     on my laptop.

21               (Previously marked Plaintiff's Exhibit

22     No. 5, first referral.)

Sydney Lester - February 11, 2021

1    had occurred like the, her noticing that Ms. B████

2    had made several other posts the same day on

3    Facebook but made no mention of the child being

4    born, did you find that persuasive at all?

5          A    Are you asking me to opine on

6    something that I didn't make?

7          Q    And why is it you don't think you can

8    opine on that?

9          A    Because I don't have the information

10   to make a decision.

11         Q    Are you someone that uses Facebook?

12         A    No.

13         Q    What message did you hope to send to

14   Ms. Lu with your proposed ten-day suspension?

15         A    That her complaints were, they were

16   investigated and that everybody came back saying

17   that there was nothing, and that we need to move

18   on.

19         Q    Do you know if Mr. Lawson conducted an

20   investigation of whether or not SB fraudulently

21   obtained leave?

22         A    I don't know.

Sydney Lester - February 11, 2021

1          Q     Have you read any investigations by

2    Mr. Lawson other than the one dealing with Ms. Lu?

3          A     No.

4          Q     Okay.

5                MR. SCHLEICHER:  Why don't we take a

6    five-minute break and I will see if I have any

7    final questions.

8                MR. DANIEL:  David, I'm going to

9    contact Tiffany Crowe during that period and tell

10   her we will be a little bit behind on the 4

11   o'clock time you gave her.  Are you okay with

12   that?

13               MR. SCHLEICHER:  Yes.

14               MR. DANIEL:  Okay.

15               (Recess taken -- 3:57 p.m.)

16               (After recess -- 4:06 p.m.)

17               MR. DANIEL:  Mr. Lester, you are still

18   under oath, so continue.

19   BY MR. SCHLEICHER:

20         Q     Mr. Lester, did you observe any other

21   employees besides Ms. Lu raise questions about

22   whether or not SB had actually had the daughter

Sydney Lester - February 11, 2021

```
1    that he relied on to claim parental leave?

2         A    No.

3         Q    And is there anything I have asked you

4    that you would like for me to go back and ask

5    again or clarify what I was asking or to clarify

6    your answer to?

7         A    No, not really.  Nothing that I can

8    think of.

9              MR. SCHLEICHER:  Okay.

10             Mr. Daniel, do you have any questions?

11             MR. DANIEL:  Just a couple here.

12             Can we pull back up what we are

13   calling here Exhibit, I think it's your Exhibit 5,

14   is that right, the April -- yes, Exhibit 5, the

15   April 2nd Notice of Proposed Suspension?

16             MR. SCHLEICHER:  Okay.

17                      EXAMINATION

18   BY MR. DANIEL:

19        Q    Mr. Lester, you testified earlier that

20   in drafting this letter you relied on the

21   investigative report.  You can scroll through

22   this.  It lists a number of different exhibits.
```

Sydney Lester - February 11, 2021

1    Stop there for a second.

2          So it included the -- can you read the

3    second paragraph there, just to yourself, starting

4    with, "in addition."

5          A    Okay, so what is your question?

6          Q    Okay.

7          So you recall in the investigative

8    report that the Office of the Inspector General

9    and the Board of Ethics and Government

10   Accountability had reviewed Ms. Lu's complaints

11   about whether or not SB had a child?

12         A    Yes.  From the report, yes.

13         Q    Do you have any reason to doubt those

14   investigations or that report?

15         A    No.

16         Q    Do you recall there being other

17   similar investigations by both DCRA and DCHR in

18   that report?

19         A    Are there similar investigations in

20   this report?

21         Q    If you don't remember we can keep

22   going through the letter here.

Sydney Lester - February 11, 2021

Page 59

1      UNITED STATES OF AMERICA )

2      STATE OF MARYLAND        )

3

4              I, CAPPY HALLOCK, the reporter before

5      whom the foregoing deposition was taken, do hereby

6      certify that the witness whose testimony appears

7      in the foregoing deposition was sworn by me; that

8      said deposition is a true record of the testimony

9      given by said witness.

10             I further certify that I am neither

11     counsel for, related to, nor employed by any of

12     the parties to the action in which this deposition

13     was taken; and further that I am not a relative or

14     employee of any attorney or counsel employed by

15     the parties hereto, or financially or otherwise

16     interested in the outcome of this action.

17

18

19

20                       Cappy Hallock, RPR, CRR

21

22     My Commission expires January 19, 2025