Tyrone Lawson - April 14, 2021

```
 1              UNITED STATES DISTRICT COURT

 2              FOR THE DISTRICT OF COLUMBIA

 3

 4    _____
                                   )
 5    QING LU,                     )
                                   )
 6              Plaintiff,         )
                                   )
 7         vs.                     )    Civil Action No.
                                   )    1:20-cv-00461-APM
 8    DISTRICT OF COLUMBIA, et al. )
                                   )
 9              Defendants.        )
                                   )
10    _____)

11

12

13

14         VIRTUAL DEPOSITION OF TYRONE LAWSON

15            Wednesday, April 14, 2021

16                   9:42 a.m.

17

18

19

20

21

22    REPORTED BY: Lohna Burns
```

Tyrone Lawson — April 14, 2021

1          Virtual Deposition of Tyrone Lawson

2     held via WebEx Remote.

3

4

5          Pursuant to Notice,  the Virtual

6     Deposition of TYRONE LAWSON was taken

7     commencing at 9:42 a.m. on Wednesday,

8     April 14, 2021, before Lohna Burns, Court

9     Reporter and Notary Public in and for the

10    District of Columbia.

11

12

13

14

15

16

17

18

19

20

21

22

Tyrone Lawson - April 14, 2021

1          A P P E A R A N C E S:

2      On behalf of Plaintiff:

3          DAVID S. SCHLEICHER, ESQUIRE

4          Schleicher Law Firm, PLLC

5          1629 K Street, N.W.

6          Suite 300

7          Washington, D.C.   20006

8          (202) 540-9950

9           Email:  david@gov.law

10     On behalf of Defendants:

11         ADAM P. DANIEL, ESQUIRE

12         MATTHEW BLECHER, ESQUIRE

13         Assistant Attorneys General

14         Civil Litigation Division, Section III

15         Office of the Attorney General

16         District of Columbia

17         400 6th Street, N.W.

18         Washington, D.C.   20001

19         (202) 442-7272

20         (202) 442-9774

21         Email:  adam.daniel@dc.gov

22                 matthew.blecher@dc.gov

Tyrone Lawson - April 14, 2021

```
 1              A P P E A R A N C E S ( CONTINUED ):

 2

 3      Also Present:

 4      Reginald Stewart

 5      Luchi Lu

 6                  C O N T E N T S

 7      EXAMINATION BY:                           PAGE

 8         Mr. Schleicher                       5, 149

 9         Mr. Daniel                              125

10                     INDEX TO EXHIBITS

11      EXHIBIT NO.:        DESCRIPTION           PAGE

12      Exhibit 1         Investigative Report     23

13      Exhibit 2         PDF of Exhibits          62

14      Exhibit 5         Document                 53

15      Defense Exhibit 1  Exhibits 3 from        125

16                         Investigative Report

17

18                  ********

19

20

21

22
```

Tyrone Lawson - April 14, 2021

```
 1                    P-R-O-C-E-E-D-I-N-G-S
 2    WHEREUPON,
 3                        TYRONE LAWSON,
 4    called as a witness, being first duly sworn, was
 5    examined and testified as follows:
 6                        EXAMINATION
 7    BY MR. SCHLEICHER
 8         Q.    Mr. Lawson, I'm David Schleicher and I
 9    will be asking some questions on behalf of Luchi Lu.
10    Can you hear me all right?
11         A.    Yes.
12         Q.    If you will do as you have done so far and
13    give a verbal answer in addition to any nodding of
14    the head, it will help the court reporter get a good
15    record.  And for the same reason if you will avoid
16    interrupting my questions and I'll try to avoid
17    interrupting your answers; is that all right?
18         A.    Yes.
19         Q.    Is there any reason, medication, lack of
20    sleep or anything else that would keep you from
21    giving complete and truthful answers this morning?
22         A.    Not at all.
```

Tyrone Lawson - April 14, 2021

1   Q. Okay.  If you need to take a break at any

2 time, if you will just answer the most recent

3 question and then we can take a break, that's not a

4 problem.

5     Have you had your deposition taken before?

6   A. Yes.

7   Q. What was that matter about?

8   A. This was previous matter of employment as

9 a law enforcement officer.

10   Q. Have you had your deposition taken before

11 in any matter, any other administrative or court

12 matters asserting whistleblower retaliation in which

13 you were the investigator, as you are this one?

14   A. No.

15   Q. Do you consider yourself to be a member of

16 management?

17    MR. DANIEL:  Objection.  Form.  You can

18 answer.

19 BY MR. SCHLEICHER:

20   Q. Did you hear that one?

21   A. No, I don't consider myself -- I'm sorry.

22 You said do I consider myself management?

Tyrone Lawson - April 14, 2021

1        Q.    Yes.

2        A.    No.

3        Q.    How much time in total do you think you

4    spent preparing for today's deposition in round

5    numbers?  More like half an hour?  Two hours?  Ten

6    hours?

7        A.    I want to say at least three, maybe four

8    hours.

9        Q.    Okay.

10       A.    The reason, the report alone is about two

11   hours.

12       Q.    You did get a chance to read the 35-page

13   report and all the exhibits?

14       A.    Yes.  I didn't read all the exhibits.  I

15   glanced them over.  I recall the exhibits from the

16   investigation.

17       Q.    Okay.  Did you listen to audio of any of

18   the interviews you conducted to prepare for the

19   deposition?

20       A.    No.

21       Q.    Did you review any of the transcripts that

22   I sent over of those interviews?

Tyrone Lawson - April 14, 2021

```
 1    were assigned to do your investigation?

 2        A.   I was assigned on November 28, 2018.

 3        Q.   At the time you were initially assigned,

 4    how certain were you of whether or not SB had

 5    engaged in fraud as to parental leave?

 6            MR. DANIEL:  Objection.  Form.

 7    Foundation.  You can answer of it.

 8            THE WITNESS:  How certain was I that he

 9    engaged in it?

10    BY MR. SCHLEICHER:

11        Q.   That he had or had not.

12        A.   I wasn't -- I was -- I wasn't certain.

13        Q.   And then at the time you finished the

14    report -- I see a date of February 23, 2019 -- how

15    certain were you at that point of whether or not SB

16    had engaged in fraud related to paid parental leave?

17            MR. DANIEL:  Objection.  Form.

18    Foundation.  You can answer.

19            THE WITNESS:  I was pretty certain.

20    BY MR. SCHLEICHER:

21        Q.   Okay.  And pretty certain, if we were to

22    say 1 is not certain at all and 100 is absolutely
```

Tyrone Lawson - April 14, 2021

1    certain, where would you put it on the scale?

2              MR. DANIEL:  Objection.  Form.  You can

3    answer.

4              THE WITNESS:  I would say at least 90 to

5    95 percent.

6    BY MR. SCHLEICHER:

7        Q.    Okay.  What to you was the most persuasive

8    evidence that SB was innocent of the fraud claim?

9              MR. DANIEL:  Objection.  Form.  You can

10   answer.

11             THE WITNESS:  Okay.  What influenced me

12   the most that he was -- that he --

13   BY MR. SCHLEICHER:

14       Q.    What was the most persuasive evidence that

15   he was innocent of that?

16       A.    Because I saw the documents -- observed

17   the documents that Mr. SB had submitted to the

18   agency to get his FMLA application approved.

19       Q.    Okay.  And without going into the details

20   of exactly what was on the document, can you tell me

21   generally what it was; for example, was it a birth

22   certificate or something from the hospital?

Tyrone Lawson - April 14, 2021

Page 26

```
1          A.    Yes, it was a birth certificate.

2          Q.    Okay.  A birth certificate.  Anything else

3     that you are aware of?

4          A.    The application that was submitted for the

5     Family Medical Leave Act.

6          Q.    Okay.  In your experience as an

7     investigator and a law enforcement officer, do you

8     know whether birth certificates are ever forged?

9               MR. DANIEL:  Objection.  Form.  You can

10    answer.

11              THE WITNESS:  Okay.  You saying in my

12    experience do I know of it being...

13    BY MR. SCHLEICHER:

14         Q.    Do you know -- do you have an opinion as

15    to whether or not birth certificates are sometimes

16    forged?

17              MR. DANIEL:  Objection.  Form.  You can

18    answer.

19              THE WITNESS:  Yes, I do have an opinion on

20    it.

21    BY MR. SCHLEICHER:

22         Q.    And what is that?
```

Tyrone Lawson - April 14, 2021

1              MR. DANIEL:  Objection.  Form.  You can

2       answer.

3              THE WITNESS:  My opinion is that anything

4       can be forged.

5       BY MR. SCHLEICHER:

6          Q.   And do you know of anything that the

7       District of Columbia did to authenticate the birth

8       certificate that SB provided in support of his paid

9       parental leave application?

10             MR. DANIEL:  Objection.  Form.  You can

11      answer.

12             THE WITNESS:  Okay.  Do I know of any

13      thing that the D.C. government did?

14      BY MR. SCHLEICHER:

15         Q.   Right.  To authenticate that birth

16      certificate.

17         A.   No, not -- no.

18         Q.   And have you -- the daughter that was the

19      subject of the paid parental leave request by SB,

20      have you ever met that child?

21             MR. DANIEL:  Objection.  Form.

22      Foundation.  You can answer.

Tyrone Lawson - April 14, 2021

1          THE WITNESS:  No, I have not.

2     BY MR. SCHLEICHER:

3          Q.   And on what month and day of the month do

4     you contend that child was born?

5          MR. DANIEL:  Objection.  Form.  You can

6     answer.

7          THE WITNESS:  I don't -- I don't recall

8     exactly, but I believe it was May of 2016.

9     BY MR. SCHLEICHER:

10         Q.   Do you know if May 19th or May 20th sounds

11    accurate?

12         MR. DANIEL:  Objection.  Form.  You can

13    answer.

14         THE WITNESS:  That sounds about right.

15    BY MR. SCHLEICHER:

16         Q.   Is there one of those two that sounds more

17    accurate than the other?

18         MR. DANIEL:  Objection.  Form.  You can

19    answer.

20         THE WITNESS:  My memory, I believe it was

21    the 19th.

22

Tyrone Lawson - April 14, 2021

```
 1    BY MR. SCHLEICHER:

 2         Q.   Do you happen to know why SB has not

 3    chosen to clear all this up by appearing somewhere

 4    with his child?

 5              MR. DANIEL:  Objection.  Form.  You can

 6    answer.

 7              THE WITNESS:  Do I know why he hasn't

 8    appeared with his child?

 9    BY MR. SCHLEICHER:

10         Q.   Right.

11              MR. DANIEL:  Objection.  Form.  You can

12    answer.

13              THE WITNESS:  No, not at all.  That's a

14    matter of personal preference.

15    BY MR. SCHLEICHER:

16         Q.   Okay.  Let's look at this Exhibit 1, your

17    investigative report.  I see on Page 1 it says

18    respondent, and it has Luchi Lu's name.

19              Is it correct that she was the only person

20    who was the subject in an interview sense of the

21    investigation?

22         A.   Of this particular investigation, yes.
```

Tyrone Lawson - April 14, 2021

1        Q.   As we go down through the investigative

2    summary, I see it mentions that you were looking

3    into whether Luchi Lu -- I can just start over.

4            (Interference.)

5            If we go to the investigation summary

6    paragraph on Page 1, am I correct in reading that

7    you were looking into whether Luchi Lu, quote,

8    "knowingly and willfully stalked and harassed

9    protection engineer" SB and his wife, NB; is that

10   right?

11       A.   That was -- yeah, that was one of the

12   allegations.

13       Q.   Is this the only DCRA case in which your

14   report has characterized an employee's conduct as

15   involving knowing and willful stalking?

16           MR. DANIEL:  Objection.  Form.  You can

17   answer.

18           THE WITNESS:  I believe so, yeah.

19   BY MR. SCHLEICHER:

20       Q.   And what is your personal understanding

21   about whether or not violation of the D.C. stalking

22   law can result in someone being sent to jail?

Tyrone Lawson - April 14, 2021

1          MR. DANIEL:  Objection.  Form.  You can

2    answer.

3          THE WITNESS:  I'm sorry.  Can you repeat

4    that?

5    BY MR. SCHLEICHER:

6       Q.   Yes.  I'm wondering if your -- what your

7    personal view is, if you have one, of whether or not

8    the D.C. stalking law can result in someone being

9    sent to jail?

10          MR. DANIEL:  Objection.  Form.  You can

11    answer.

12          THE WITNESS:  That's not up to me.  That's

13    up to the criminal -- the criminal justice process

14    involving a jury and a judge.

15    BY MR. SCHLEICHER:

16       Q.   And what I'm asking is, in your

17    understanding, is that one possible outcome in D.C.

18    for someone convicted of violating the stalking law?

19          MR. DANIEL:  Objection.  Form.  You can

20    answer.

21          THE WITNESS:  Okay.  If you're asking me

22    can someone go to jail, can someone be convicted of

Tyrone Lawson - April 14, 2021

Page 32

1    D.C. stalking law, I answer yes.

2    BY MR. SCHLEICHER:

3        Q.   Okay.  Do you know whether the D.C.

4    stalking law contains a provision that says this

5    section does not apply to constitutionally protected

6    activity?

7            MR. DANIEL:  Objection.  Form.

8    Foundation.  Calls for legal conclusion.  You can

9    answer.

10           THE WITNESS:  Okay.  Are you asking me if

11   I know that?  No.  There may be some case law that

12   refers to that, but I don't know that the law says

13   that specifically.

14   BY MR. SCHLEICHER:

15       Q.   Did you read the text of the D.C. stalking

16   law prior to preparing this investigative report?

17       A.   Several times.

18       Q.   Who was the first witness or management

19   official you interacted with who used the word

20   stalking?

21       A.   I don't -- I don't recall any -- any

22   management person used the word stalking.

Tyrone Lawson – April 14, 2021

1      Q.   Of the interviews that you conducted, who

2   was the first person who used the word stalking?

3      A.   I don't recall anyone that I interviewed

4   using the word stalking.

5      Q.   What one specific action by Luchi Lu did

6   you consider to be the clearest example of her

7   knowingly and willfully stalking SB?

8           MR. DANIEL:  Objection.  Form.  You can

9   answer.

10          THE WITNESS:  Her conduct, her continued

11   course of conduct over something like three years.

12   BY MR. SCHLEICHER:

13      Q.   Okay.  And I understand you are relying on

14   a course of conduct.  I wondering within that course

15   of conduct, what is the one clearest example do you

16   believe of conduct that rises to the level of what

17   you consider stalking?

18          MR. DANIEL:  Objection.  Asked and

19   answered.  You can answer.

20          THE WITNESS:  Again, her continued course

21   of conduct of placing Mr. SB either in danger or in

22   fear of danger of losing his job, for one; and for

Tyrone Lawson – April 14, 2021

1    continuously informing co-workers that he was

2    violating D.C. laws or regulations regarding his

3    FMLA that he obtained in May and June of 2016.

4    BY MR. SCHLEICHER:

5        Q.    Within that course of conduct, what one

6    thing did you consider the most inappropriate?

7            MR. DANIEL:  Objection.  Form.  Asked and

8    answered.  You can answer.

9            THE WITNESS:  The one thing is that she

10   continuously harassed, and I use the word

11   specifically, as she continuously harassed Mr. SB

12   personally about the matter involving his FMLA

13   leave.

14   BY MR. SCHLEICHER:

15       Q.    Okay.  I don't think I am being clear with

16   my questions.  I'm not looking for what she

17   continuously did or did over time.  I'm asking you

18   to provide one concrete example of what you thought

19   was serious misconduct as part of this stalking or

20   harassing.

21           MR. DANIEL:  Objection.  Form.  Asked and

22   answered.  You can answer again.

Tyrone Lawson - April 14, 2021

1          THE WITNESS:  That is my answer to that

2     question:  That stalking is a -- is a continued

3     course of conduct.  It's not one specific act that

4     someone did.  And when someone did one specific act,

5     they would most likely be in violation of assault or

6     battery or something like that.

7          But stalking and harassment involves a

8     continuous ongoing process that someone does towards

9     another person.

10    BY MR. SCHLEICHER:

11         Q.   Okay.  And I just want to make sure this

12    is very clear for the judge and/or the jury.  You

13    have no specific examples you can give me of her

14    conduct that constituted this larger pattern of

15    harassment or stalking; is that right?

16         MR. DANIEL:  Objection.  Mischaracterizes

17    the witness's testimony.  Asked and answered.  You

18    can answer again.

19         THE WITNESS:  Again, it is my experience

20    as law enforcement as reviewing D.C. Codes related

21    to stalking and harassment, that it's a course of

22    conduct that places the victim in fear or in -- in a

Tyrone Lawson - April 14, 2021

1    displaced sort of fear against the person that's

2    doing the acts of stalking and harassment against

3    them.

4            So, again, the answer to your question is

5    it was -- it's a continuous course of conduct that

6    Ms. Lu was practicing against Mr. SB.

7    BY MR. SCHLEICHER:

8        Q.    Did you consider Luchi Lu's interactions

9    with the mayor about SB to be part of the conduct

10   that you thought was stalking?

11           MR. DANIEL:  Objection.  Foundation.  You

12   can answer.

13           THE WITNESS:  I -- no, I did not.

14   BY MR. SCHLEICHER:

15       Q.    Can you give me one example of her conduct

16   that you think intentionally caused SB to fear for

17   his safety?

18           MR. DANIEL:  Objection.  Form.  Asked and

19   answered.  You can answer again.

20           THE WITNESS:  All right.  Ms. Lu's

21   conduct, continued course of conduct, of reporting

22   misinformation against Mr. SB and his family, and in

Tyrone Lawson - April 14, 2021

1     an attempt to create -- an attempt to have

2     disciplinary action taken against Mr. SB.

3     BY MR. SCHLEICHER:

4          Q.    Okay.  What I was asking was one example

5     of her conduct that intentionally caused SB to fear

6     for his safety in particular.

7               MR. DANIEL:  Objection.  Form.  Asked and

8     answered.  You can answer again.

9               THE WITNESS:  That Ms. Lu continued a

10    course of conduct that she presented to the agency,

11    to outside agencies, that Mr. SB had violated D.C.

12    Code and D.C. Law and regulations regarding FMLA.

13              MR. SCHLEICHER:  Okay.  And I will note --

14    this is not for you, Mr. Lawson, but just for the

15    other attorneys -- that at this point my expectation

16    is we are going to have a motion to compel for

17    failure to give -- to answer the question about

18    specific examples and possibly a motion for

19    sanctions due to the level, the frequency of

20    objections.

21              MR. DANIEL:  David, if you would like to

22    go through the report and ask him about different

1    examples that are given in that report and whether

2    that is included in the course of conduct, you are

3    more than welcome to do that.

4    BY MR. SCHLEICHER:

5        Q.   My next question is, can you provide me an

6    example of something that Luchi Lu did that you

7    believed intentionally caused SB to feel seriously

8    alarmed, disturbed or frightened?

9             MR. DANIEL:  Objection.  Asked and

10   answered.  You can answer again.

11            THE WITNESS:  One example is Ms. Lu

12   personally confronted Mr. SB in front of other

13   employees.

14   BY MR. SCHLEICHER:

15       Q.   Okay.  Can you explain more what was

16   involved in that situation?

17       A.   Yes.  Ms. Lu -- Mr. SB was having an

18   informal social conversation with a co-worker when

19   Ms. Lu walked in and made comments suggesting that

20   she should fake her pregnancy to get FMLA like other

21   co-workers did.

22       Q.   Based on your investigation, did it appear

Tyrone Lawson - April 14, 2021

```
1    to you there was ever a time that the disputes

2    between SB and Luchi Lu might have broken out into a

3    physical fight or something like that?

4           MR. DANIEL:  Objection.  Form.

5    Foundation.  You can answer.

6           THE WITNESS:  I'm sorry.  Are you asking

7    me if I thought that the interaction between Ms. Lu

8    and SB could have at some point resulted in a

9    physical fight?

10   BY MR. SCHLEICHER:

11       Q.   Did you ever believe that was a likely

12   outcome?

13          MR. DANIEL:  Objection.  Form.

14   Foundation.  You can answer.

15          THE WITNESS:  No, I did not.

16   BY MR. SCHLEICHER:

17       Q.   Based on your experience as a law

18   enforcement officer and misconduct investigator,

19   would you agree it's typical for a person who is the

20   subject of a whistleblower report to be upset about

21   it?

22          MR. DANIEL:  Objection.  Form.
```

Tyrone Lawson - April 14, 2021

Page 40

```
1        Foundation.   You can answer.
2                 THE WITNESS:   Absolutely.   I was
3        terminated for a whistleblower complaint.
4        BY MR. SCHLEICHER:
5            Q.   The people that you reported as engaging
6        in misconduct, were they upset you had accused them
7        of wrongdoing?
8                 MR. DANIEL:   Objection.   Form.
9        Foundation.   Can you answer.
10                THE WITNESS:   I can't say what other
11       people were feeling.
12       BY MR. SCHLEICHER:
13           Q.   Did you form an opinion about whether or
14       not the officers that you reported for violating the
15       Fourth Amendment were upset at your allegation?
16                MR. DANIEL:   Objection.   Form.
17       Foundation.   Assumes facts not in evidence.   You can
18       answer.
19                THE WITNESS:   I can't answer what other
20       people were feeling.   I would expect that they were.
21       BY MR. SCHLEICHER:
22           Q.   And in your own situation where you
```

Tyrone Lawson - April 14, 2021

Page 41

```
1     were -- would you classify yourself as a

2     whistleblower in that Bowie State incident?

3             MR. DANIEL:  Objection.  Form.

4     Foundation.  You can answer.

5             THE WITNESS:  Yes, I would.  And so would

6     the Maryland Court of Appeals.

7     BY MR. SCHLEICHER:

8         Q.   And do you believe you were telling the

9     truth in making your report in that situation?

10            MR. DANIEL:  Objection.  Form.

11    Foundation.  You can answer.

12            THE WITNESS:  I was telling the truth

13    based on facts.

14    BY MR. SCHLEICHER:

15        Q.   What is your understanding about whether

16    SB's work performance suffered as result of his

17    interactions with Luchi Lu?

18            MR. DANIEL:  Objection.  Form.  You can

19    answer.

20            THE WITNESS:  Only what Mr. SB indicated

21    that it was suffering.

22
```

Tyrone Lawson - April 14, 2021

Page 42

```
 1    BY MR. SCHLEICHER:
 2         Q.   And where did he indicate that, was that
 3    in his interview with you or in something he
 4    submitted in writing?
 5         A.   I want to say -- I know he did it in
 6    writing in one of his emails to his superiors.  And
 7    I know that -- I inferred that, going to interview
 8    with him, that it was disrupting his -- at least his
 9    focus or ability to focus on work at times.
10    BY MR. SCHLEICHER:
11         Q.   Do you know if his performance rating went
12    down as result of his interactions with Luchi Lu?
13              MR. DANIEL:  Objection.  Form.
14    Foundation.  You can answer.
15              THE WITNESS:  No, I do not.
16    BY MR. SCHLEICHER:
17         Q.   Do you have an understanding about whether
18    or not Luchi Lu's work performance suffered as
19    result of the time she may have spent thinking or
20    working on related matters?
21              MR. DANIEL:  Objection.  Form.
22    Foundation.  You can answer.
```

Tyrone Lawson - April 14, 2021

Page 53

```
1              (Lawson Deposition Exhibit No. 5 marked
2      for identification)
3      BY MR. SCHLEICHER:
4          Q.   Okay.  Let's go to what I've marked as
5      Exhibit 5.  In this -- in the file of exhibits for
6      today, it's PDF Page 242.
7              Looking at this document in which I
8      redacted SB's last name, does this look familiar to
9      you at all?  And let me scroll down to the next
10     page, a third page.
11             Does any of this look familiar to you?
12         A.   No.
13         Q.   Did Luchi Lu mention to you at any point
14     that there was an admission of violation of ethics
15     rules by SB?
16         A.   No, I don't recall her mentioning it.
17         Q.   Okay.  Let me go down to the date on this
18     document.
19             See the date of 12 -- SB's signature,
20     December 5th, 2016?
21         A.   Yes.
22         Q.   Was that prior to your investigation?
```

Tyrone Lawson - April 14, 2021

Page 54

```
 1        A.   Yes.
 2        Q.   Is there any reason you did not include
 3   information related to this investigation in your
 4   own investigation?
 5        A.   I wasn't investigating the -- whatever his
 6   allegation was.
 7        Q.   Do you think it has any impact on your
 8   investigation of who to believe when one of the two
 9   parties you are deciding between has earlier
10   admitted to an ethics violation?
11        A.   Absolutely not.
12        Q.   Did you include your audio recordings with
13   your Report of Investigation as exhibits?
14        MR. DANIEL:  Objection.  Form.  Can you
15   spell it out a little more, David?
16        MR. SCHLEICHER:  I'm sorry.
17   BY MR. SCHLEICHER:
18        Q.   The audio recordings of your interviews
19   with witnesses, were those attached to your Report
20   of Investigation, or did you rely on your summaries
21   of those interviews?
22        A.   No, I never attach my audio interviews as
```

1   audio exhibits.

2       Q.   Do you know if either Sydney Lester or Mr.

3   Whitescarver ever requested those audio recordings

4   from you?

5           MR. DANIEL:  Objection.  Form.  You can

6   answer.

7           THE WITNESS:  I don't -- I don't recall.

8   Mr. Lester may have asked me for them.  I don't --

9   asked me for his interview.  I would have only --

10  anyone I interviewed has a right to request their --

11  their own interview, which I will gladly provide it

12  to whoever I interviewed, but I don't specifically

13  recall him asking for that, no.

14  BY MR. SCHLEICHER:

15      Q.   In looking at your Report of

16  Investigation, I saw there were some interviews in

17  December, and then it looked like the next interview

18  was not until February, and that being of Luchi Lu.

19          Does that sound right, that there was some

20  period in which there were no interviews between

21  December and February?

22      A.   That could be.

Tyrone Lawson - April 14, 2021

1       Q.    And that leads me to my next question.   Do
2    you expect that you would have dropped the
3    investigation if Luchi Lu had not gone to the mayor
4    in February of 2019?
5            MR. DANIEL:  Objection.  Form.  You can
6    answer.
7            THE WITNESS:  Okay.  Let me just say
8    whatever Ms. Lu -- whatever interactions she had
9    with the mayor had no bearing on my conducting -- my
10   conducting this investigation.
11   BY MR. SCHLEICHER:
12      Q.    And her -- Luchi Lu's interactions with
13   the mayor, would you say that was a minor part of
14   your investigation or a major part of your
15   investigation?
16           MR. DANIEL:  Objection.  Form.  You can
17   answer.
18           THE WITNESS:  It wasn't part of my
19   investigation at all.
20   BY MR. SCHLEICHER:
21      Q.    Okay.  It was -- I'm sorry, did you say it
22   was not part of your investigation at all?

Tyrone Lawson - April 14, 2021

Page 62

1    that someone has engaged in criminal misconduct, do

2    you believe -- do you agree it's important to get

3    the facts right?

4            MR. DANIEL:  Objection.  Form.  You can

5    answer.

6            THE WITNESS:  Yes.

7    BY MR. SCHLEICHER:

8        Q.   Do you believe this investigative report

9    has a lot of factual errors in it?

10           MR. DANIEL:  Objection.  Form.  You can

11   answer.

12           THE WITNESS:  No, I don't believe that.

13   BY MR. SCHLEICHER:

14       Q.   My own count was more than 20 references

15   to stalking in the 35-page report.  Does that number

16   sound about right to you, or would you like us to do

17   a word search and inform the number of times you

18   used that word?

19           MR. DANIEL:  Objection.  Form.  You can

20   answer.

21           THE WITNESS:  I'll stipulate to that.

22           (Lawson Deposition Exhibit No. 2 marked

Tyrone Lawson - April 14, 2021

```
1     for identification)

2     BY MR. SCHLEICHER:

3          Q.    And I've marked as Exhibit 2, which starts

4     at Page 37, of the overall PDF of the exhibits

5     today.

6               MR. DANIEL:  Mr. Schleicher, we have a

7     form and foundation objection generally.  We can

8     refrain from making it regularly if we agree it's a

9     standing objection.

10              MR. SCHLEICHER:  Okay.  And, I'm sorry,

11    can you explain more what -- I'm not going to argue

12    with you about whether it's a good objection or not,

13    but just explain more what the objection is so maybe

14    I might be able to resolve it.

15              MR. DANIEL:  So these are not officially

16    transcribed transcripts and we don't have those

17    people giving that testimony.  It's assuming facts.

18    BY MR. SCHLEICHER:

19         Q.    Okay.  Mr. Lawson, are you aware of

20    anything that would prevent the District of Columbia

21    Government from transcribing your audio recording if

22    it wanted to?
```

Tyrone Lawson - April 14, 2021

```
1              MR. DANIEL:  Objection.  Form.  You can

2      answer.

3              THE WITNESS:  No.

4      BY MR. SCHLEICHER:

5         Q.   And you see over on the left in the PDF

6      bookmarks, I have witness names for Christopher

7      Bailey, SB, Chrys Edet, Syed Hashmi, Sydney Lester,

8      second Sydney Lester, Luchi Lu, Samuel Mutia,

9      Harrison Shelton, Keith Slade, and Tesfaye Hapte.

10             So you see those?

11        A.   Yep.

12        Q.   And would you agree those are some of the

13     witnesses that you interviewed as part of your

14     investigation of Luchi Lu?

15        A.   Yes.

16        Q.   How possible do you think it is that the

17     only two mentions of stalking in all 12 of those

18     interviews were one time you mentioned it to Luchi

19     Lu and one time you mentioned it to Christopher

20     Bailey?

21             MR. DANIEL:  Objection.  Form.  You can

22     answer.
```

1          A.    The document is part of my investigation,

2     yes.

3          Q.    Okay.  And I may have misunderstood or

4     misinterpreted something you said earlier, so I'm

5     asking you to clarify whether or not the -- perhaps

6     we need to look at the document.  But as we go down,

7     we see the email here from Ms. Lu to various email

8     addresses at EOM and DCRA with the subject line of

9     "Report to Mayor Bowser wearing pillow for paternity

10    leave."

11             And then we see an email below that.  And

12    was this email below that part of your investigative

13    report, part of your investigation into Ms. Lu's

14    conduct towards SB?

15         A.    Was it?  Yes.

16         Q.    Now, the substance of this communication,

17    prior to Ms. Lu forwarding you this email, had your

18    investigation uncovered the substance of the

19    February 6th, 2019 email?

20             MR. SCHLEICHER:  Objection.  Form.

21             MR. DANIEL:  Let me rephrase that.

22

Tyrone Lawson - April 14, 2021

1    BY MR. DANIEL:

2         Q.   Mr. Lawson, prior to receiving this email

3    from Ms. Lu, did you know the substance of her

4    communication to the mayor?

5         A.   No, I didn't know the substance of her

6    communication.  I knew that she approached the

7    mayor.

8         Q.   Now, everything we've just discussed, and

9    other examples in the investigative report, you

10   testified earlier to a constellation of facts.  Are

11   these the things you're referring to?

12        A.   Yes.

13        Q.   Mr. Lawson, you also, I believe, testified

14   earlier that you had perhaps seen a birth

15   certificate or a parental leave application; is that

16   correct?

17        A.   Yes.

18        Q.   Did you include a copy of either of those

19   documents in your investigative report?

20        A.   No.  My agency wouldn't allow me to copy

21   it because it was protected HIPAA.

22        Q.   Okay. I think the last question I really

Tyrone Lawson - April 14, 2021

1     have for you, is you testified earlier about your --
2     I'm sorry.
3              What is the title of the person that you
4     -- so you mentioned earlier that you reported to
5     Walter Crawford; is that correct?
6          A.   Yes, that was -- yeah.
7          Q.   And can you tell me what his title was?
8          A.   Chief administrative officer.
9          Q.   And can you tell me what your title is
10    again?
11         A.   My title at the agency is special
12    investigator.
13         Q.   So you are a special investigator
14    reporting to the chief administrative officer; is
15    that correct?
16         A.   Yes, that was my direct report.
17         Q.   Okay.  And are you aware of what Ms. Lu's
18    title is at DCRA?
19         A.   I think fire protection examiner or
20    reviewer, something like that.
21         Q.   Okay.  And are you -- at the time of the
22    events you were investigating, are you aware of who

Tyrone Lawson - April 14, 2021

1    she reported directly to?

2         A.   She reported to Sydney Lester.

3         Q.   All right.  And who did Mr. Lester report

4    to?

5         A.   Mr. Christopher Bailey, the deputy chief

6    building official.

7         Q.   Did Mr. Lester report to you in your

8    capacity as an investigator?

9         A.   No.

10        Q.   Did Mr. Bailey report to you in your

11   capacity as an investigator?

12        A.   No.

13        Q.   Did Ms. Lu report to you in your capacity

14   as an investigator?

15        A.   No.

16             MR. DANIEL:  If you guys will give us just

17   a couple of minutes, five-minute break, all right?

18             MR. SCHLEICHER:  I had a few more.  I

19   don't know if you want --

20             MR. DANIEL:  I don't mind you asking a

21   couple follow-ups.  I just want to take a minute to

22   be sure I went through everything I needed to go

Tyrone Lawson - April 14, 2021

Page 149

1    through if that's all right.

2            MR. SCHLEICHER:  Yes.

3               (Short Recess)

4            MR. DANIEL:  Mr. Blecher, Mr. Lawson, are

5    you back with us?

6            MR. BLECHER:  Yeah, I am here.

7            MR. DANIEL:  Mr. Lawson?

8            Ms. Schleicher, until he gets back, can we

9    confer with you briefly when you're done with your

10   next set of questions?

11           MR. SCHLEICHER:  Yes.

12           MR. DANIEL:  Go ahead.  Mr. Lawson is

13   ready.

14                   EXAMINATION

15   BY MR. SCHLEICHER:

16       Q.    Okay.  Okay.  On Page 15 of -- go back to

17   the screen share.

18           I am trying to get cleared up this issue

19   about SB allegedly taking leave to cover -- to deal

20   with this traffic court case.  And I wondered if you

21   could clarify, did Ms. Lu tell you that SB had been

22   convicted and so he had to get leave for that, or

Tyrone Lawson - April 14, 2021

Page 156

```
1     CERTIFICATE OF STENOTYPE REPORTER - NOTARY PUBLIC

2

3         I, Lohna Burns, Court Reporter, the officer

4     before whom the foregoing proceeding was taken, do

5     hereby certify that the foregoing transcript is a

6     true, correct, and complete record of the

7     proceeding; that said proceeding was taken by me

8     stenographically and thereafter reduced to

9     typewriting by me; and that I am neither counsel

10    for, related to, nor employed by any of the parties

11    to this litigation and have no interest, financial

12    or otherwise, in its outcome.

13        IN WITNESS WHEREOF, I have hereunto set

14    my hand and affixed my notarial seal this 14th day

15    of April 2021.

16
                         Lohna Burns
17                       LOHNA BURNS

18                       Notary Public in and for

19                       District of Columbia

20    My commission expires:

21    1/31/2023

22
```