## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

QING LU,

        *Plaintiff,*

      v.

DISTRICT OF COLUMBIA, *et al.*,

        *Defendants.*

Civil Action No. 1:20-cv-00461-APM

### PLAINTIFF QING LU'S RESPONSES TO
### DEFENDANTS' SECOND SET OF INTERROGATORIES

To:    Defendants, by way of e-mail service to their counsel this September 16, 2021,  Adam Daniel (adam.daniel@dc.gov) and Matthew R. Blecher (matthew.blecher@dc.gov).

        Following are Plaintiff's responses to your Interrogatories portion of your August 18, 2021 discovery requests. These are answered within the deadlines set by applicable rules, taking into account any modifications by the Court and/or agreed to by the parties. If you have questions/concerns about any of the responses, let me know.

        Respectfully Submitted,

        SCHLEICHER LAW FIRM, PLLC
        1629 K St., NW, Ste. 300
        Washington, D.C. 20006
        (202) 540-9950
        (202) 683-6130 fax

By: _____
        David R. Schleicher
        DC Bar No. 428001
        david@gov.law correspondence
        efiling@gov.law for service

    ATTORNEYS FOR PLAINTIFF QING LU

██████████████████████████████████████████

1.      Describe the complete factual basis you had for alleging "that S.B. improperly was reviewing projects of someone close to him, i.e., S.C.B." as described in Paragraph 57 of your Amended Complaint.  Your description should specifically identify the date on which you became aware of each underlying fact and the source of your knowledge of each fact.  If you cannot recall a precise date, state to the best of your recollection whether you learned of a particular fact before or after you made other allegations of related wrongdoing.

RESPONSE: In addition to the response below, Plaintiff refers the Defendants to the December 7, 2016 negotiated disposition between S.B. and BEGA in which he admitted to violation of ethics rules in handling reviews involving his wife's business. *See bega.dc.gov/sites/bega/files/publication/attachments/1548-001_-_S._B*████ *_Negotiated_Disposition.pdf.* Also see the materials Defendants recently produced to Plaintiff from BEGA files, such as at Bates 1125, confirming S.B.'s involvement with his wife's projects.

DCRA moved from 941 North Capitol St., NE to 1100 4th St., SW around March 2010. Plaintiff soon began seeing Suzannah Codlin (hereafter, "S.Y.C.") frequently in the DCRA office at first mostly on the 2nd floor, the permit center. S.Y.C. was the owner of ████████ (AKA "████████, LLC") and a permit expediter who helped that company and its clients obtain building permits. Starting around 2014/2015, Plaintiff started seeing S.Y.C. in the file room and sitting at S.B.'s desk, both located on the third floor.

When S.Y.C. sat at S.B.'s desk, sometimes she carried drawings. Around that time, from general talk in the office it became known that this woman was S.B.'s girlfriend. Former file-room employee Joyce Smith (retired[1]) told Plaintiff that S.B. had been reviewing S.Y.C.'s applications and helping her get building permits. Plaintiff asked Smith why she didn't report it to Lester who was S.B.'s supervisor then. Smith said Lester was aware of it and didn't do anything about it. At that time, though not a manager, S.B. was allowed to perform what otherwise were some duties typically performed by managers like Sydney Lester, such as assigning jobs to plan reviewers of all disciplines at DCRA, e.g., Structural, Fire, Elevator, Mechanical and Plumbing and Electrical.  As an example, see this email in which he assigns projects:

**From:** ███ ███ (DCRA)
**Sent:** Friday, March 25, 2016 4:01 PM
**To:** Carroll, Arnold (DCRA); Lu, Luchi (DCRA); Mutia, Samuel (DCRA); Shelton, Harrison (DCRA); Dar, Saima (DCRA); Beshah, Hiwot (DCRA)
**Cc:** Lester, Sydney (DCRA)
**Subject:** ProjectDox Assignment List

Good afternoon ALL,

Please see attached Fire and Charlie jobs list.
- RRU- Residential Review Unit
- ER- Energy review.

Thank you and have a great weekend!

S███ B███
Permit Operations Division / Fire Protection Engineer.
Department of Consumer and Regulatory Affairs
1100 4th Street. SW. Suite E340

As it continued, in the summer of 2016, S.Y.C. started frequently bringing two boys with her to the office and the family would sit at S.B.'s cubicle. Former Deputy CBO Gary Englebert

---

[1] Plaintiff's counsel has googled ["Joyce Smith" AND DCRA] but this did not identify current contact information for her. Presumably D.C. has her last known address as of the time she left its employment.

issued a Memo through his assistant Kristen Jones to all staff (including S.B. and Lester) that government employees shall not use their official position to benefit relatives, which constitutes conflict of interest. [Plaintiff understood it already to be an ethical rule that one could not process applications from people with whom one had a close relationship.] Staff were told that government employees shall also avoid an appearance and perception of conflict of interest.

Around that time, Joyce Smith gave Plaintiff a slip of paper with the tracking number of two applications that were submitted by S.Y.C. and reviewed by S.B. Plaintiff reported to Gary Englebert her concerns of S.B.'s ongoing ethical violation, and Lester adjusting counter schedule for S.B. as well as turning a blind eye to the overt conflict of interest. Englebert relayed it to Defendant Lester. Lester emailed Plaintiff on August 31, 2016, stating that after legal department review, there was "no evidence to conclude any wrong doing" took place (see Defendants' Bates 933). It went on to direct that, "Since you [Plaintiff] have made the allegations, if you are in possession of any proof that backs up your allegations you should present them." These emails also are included as Exhibit #11 in Lawson's Investigatory Report, produced at Bates Nos. 00000150 – 00000301 by Defendants.

On September 1, 2016, Plaintiff had a meeting with Englebert and Defendant Lester as scheduled. Per Lester's request, Plaintiff presented proof of S.B. using his official position to assist his girlfriend/domestic partner/later wife. While the earlier referenced negotiated disposition had S.B. admitting to violations as to two applications and paying a resulting $1,000 fine, Englebert had informed Plaintiff in September (within days of their September 1, 2016 meeting) that S.B. had a role in 17 jobs submitted by S.Y.C. The Excel spreadsheet Defendants produced as Bates 1125 includes a tab listing 10 projects submitted by S.Y.C. or someone from the business she owns that had S.B. identified as a reviewer. Englebert informed Plaintiff that

6

Lester told him (Englebert) that when S.B. was doing most of those jobs, S.B. and S.Y. C weren't married.

While Plaintiff does not know the exact date that S.Y.C. and S.B. went from acquaintances to a romantic relationship, ███████████████████████████████
███████████████████████████████████████████████████████████████████
██████████████████████████████████ Plaintiff saw S.Y.C and two boys (sometimes one boy) were sitting at SB's desk after the memo from Kristen Jones (Engerbert's assistant) was issued.

Managements' assumption that S.B. should be believed and Plaintiff's reports disregarded appeared to her to continue up to the time of the negotiated disposition and (given Lester's testimony that he did not discuss the disposition with S.B. as a problem) possibly even after. For example, Plaintiff sees at Defs.' Bates 1068-1069 an August 2016 discussion between the General Counsel's office and BEGA in which it her reports were discounted on the basis that she allegedly has "a long held personal vendetta against" S.B.

Another factor leading Plaintiff to believe her reports about S.B.'s ethics violations were true was her review of applications such as the one at Defendants' Bates 918-926, which—along with information in the DCRA databases—confirmed S.B. was involved with projects from S.Y.C.'s company. Also see proof she submitted to Sydney Lester and Gary Englebert on September 1, 2016, forwarded by her in the email to BEGA appearing at Bates 930-931.

Plaintiff has come to even more firmly believe her reports about conflict-of-interest violations by S.B. in dealing with S.Y.C. projects were true due to information obtained in discovery. For example, S.B. in his deposition did not deny he dealt with some of his wife's projects, though claiming it was not a big deal in one way or another. Looking at Defs.' Bates

Bates 1088, an email from Runako Kumbula Allsopp (assistant general counsel) to BEGA Director B. Flowers on August 23, 2016, one sees Allsopp wrote of a claim that S.B. served as an intermediary on S.Y.C.'s behalf to determine what corrections needed to be made on one of her projects.

Also see information provided in response to the next interrogatory for further detail as to some of the communications cited above.





OATH: I have reviewed the factual assertions made above and declare them to be true and correct, to the best of my knowledge and belief.

Date: _Sep 16, 2021_ 　　　　Plaintiff Signature: 
Qing Lu (Sep 16, 2021 21:13 EDT)