Sydney Lester – February 11, 2021

```
 1              UNITED STATES DISTRICT COURT

 2              FOR THE DISTRICT OF COLUMBIA

 3

 4    _____
                                    )
 5    QING LU,                      )
                                    )
 6              Plaintiff,          )
                                    )
 7        vs.                       )   Civil Action No.
                                    )   1:20-cv-00461-APM
 8    DISTRICT OF COLUMBIA, et al.  )
                                    )
 9              Defendants.         )
                                    )
10    _____)

11

12

13

14         VIRTUAL DEPOSITION OF SYDNEY LESTER

15            Thursday, February 11, 2021

16                  2:02 p.m.

17

18

19

20

21

22    Reported by:  Cappy Hallock, RPR, CRR
```

Sydney Lester - February 11, 2021

1

2              Virtual Deposition of SYDNEY LESTER,

3     held via WebEx Remote.

4

5

6              Pursuant to Notice, the Virtual

7     Deposition of SYDNEY LESTER was taken commencing

8     at 2:02 p.m. on Thursday, February 11, 2021 before

9     Cappy Hallock, Registered Professional Reporter,

10     Certified Realtime Reporter, and Notary Public in

11     and for the State of Maryland.

12

13

14

15

16

17

18

19

20

21

22

Sydney Lester - February 11, 2021

```
1       APPEARANCES:

2

3           ON BEHALF OF PLAINTIFF:

4               DAVID R. SCHLEICHER, ESQUIRE

5               Schleicher Law Firm, PLLC

6               1629 K Street, NW, Suite 300

7               Washington, D.C. 20006

8               202-540-9950

9               david@gov.law

10

11          ON BEHALF OF DEFENDANTS:

12              MATTHEW BLECHER, ESQUIRE

13              Assistant Attorney General

14              Civil Litigation Division, Section III

15              Office of the Attorney General for the

16              District of Columbia

17              400 6th Street, NW

18              Washington, D.C. 20001

19              202-442-9774 (P)   202-730-0586 (F)

20              matthew.blecher@dc.gov

21                  -and-

22
```

Sydney Lester - February 11, 2021

```
 1      APPEARANCES:   (CONTINUED)

 2

 3              ADAM P. DANIEL, ESQUIRE

 4              Assistant Attorney General

 5              Civil Litigation Division, Section III

 6              Office of the Attorney General of the

 7              District of Columbia

 8              400 6th Street, NW

 9              Washington, D.C. 20001

10              202-442-7272 (P)    202-400-2675 (F)

11              adam.daniel@dc.gov

12

13

14

15

16

17

18    Also Present:  Luchi Lu

19              Qing Lu

20              Amir Azadniv

21    Reporter:  Cappy Hallock, RPR, CRR

22
```

Sydney Lester - February 11, 2021

```
 1                    I N D E X

 2          Deposition of SYDNEY LESTER

 3                 February 11, 2021

 4

 5     EXAMINATION BY:                        PAGE

 6          Mr. Schleicher                     11

 7          Mr. Daniel                         55

 8

 9                    -o0o-

10

11                 E X H I B I T S

12

13     LESTER                                 PAGE

14     Exhibit 8   8-31-16 e-mail, Lester to Lu    48

15     Exhibit 9   2-11-21 e-mail, Schleicher to    11

16                 Daniel, et al.

17

18                    -o0o-

19

20

21

22
```

Sydney Lester - February 11, 2021

1    wanted this Exhibit 9 included for the,

2    Plaintiff's Exhibit 9 for the discussion?

3                    MR. DANIEL:  Yes, that's fine.

4                    (Discussion off the record.)

5                    (Recess taken-- 2:16 p.m.)

6                    (After recess -- 2:33 p.m.)

7                    (Plaintiff's Deposition Exhibit No. 9

8    was marked for identification.)

9    WHEREUPON,

10                   SYDNEY LESTER,

11         A Witness called for examination, having

12   been first duly sworn, was examined and testified

13   as follows:

14                   EXAMINATION

15   BY MR. SCHLEICHER:

16        Q    Mr. Lester, I'm David Schleicher.  I'm

17   Ms. Lu's attorney and I will be asking you some

18   questions related to her case.  If I ask you

19   something that doesn't make sense or that you

20   don't hear, can you let me know?

21        A    Sure thing.

22        Q    Okay.

Sydney Lester - February 11, 2021

```
 1        A     Would you repeat that question?  I
 2   didn't hear all of it.
 3        Q     Are you aware of any other employees
 4   at DCRA who were disciplined for misleading
 5   management or supervisors?
 6        A     No.
 7        Q     Did SB ever mention to you that he
 8   might be absent from work related to a trial over
 9   a traffic ticket?
10        A     I can't recall.
11        Q     Who is it that prepared the first
12   draft of your disciplinary proposal?  Was it you
13   or did someone provide the first draft to you?
14        A     I did the first draft.
15        Q     Do you remember about how many drafts
16   there were back and forth?
17        A     No.
18        Q     And as you were is there any the --
19              THE REPORTER:  Ask the question again,
20   please.
21        Q     Yes.  When you were preparing the
22   disciplinary proposal was there any information
```

Sydney Lester - February 11, 2021

```
1     that you asked someone for beyond what was in the

2     Lawson investigation?

3          A    No.  That's whatever was in the

4     investigation.  Just what was in the

5     investigation.

6          Q    Okay.

7               THE WITNESS:  You're breaking up now.

8          Q    What do you consider to be the

9     greatest danger that is posed by conduct like --

10              MR. DANIEL:  Can you start the

11    question again?  He didn't hear the question.

12              MR. SCHLEICHER:  Sure.

13              THE WITNESS:  Your internet connection

14    is bad.

15         Q    What do you consider to be the

16    greatest danger --

17              MR. SCHLEICHER:  Let me see if I'm

18    getting a better one over here.  Hang on.

19              Can you hear me all right now?

20              THE WITNESS:  Yes.

21              MR. SCHLEICHER:  I may switch to this

22    other.
```

Sydney Lester — February 11, 2021

1               Okay.  Can you hear me all right?  Can

2     you hear me all right?

3               Can you hear me now?

4               THE WITNESS:  Yes.

5     BY MR. SCHLEICHER:

6          Q    Okay.  I'm sorry.

7               So my question was what do you

8     consider to be the greatest danger posed by

9     conduct like that that Ms. Lu engaged in?

10              MR. DANIEL:  Objection as to vague.

11              But you can answer.

12         A    Danger?  Just harassment,

13    unpleasantness in the workplace.

14         Q    Harassment and bitterness in the

15    workplace?

16         A    I'm not sure, that's my guess.

17         Q    Okay.

18              Do you know if Melinda Bolling played

19    any role in Ms. Lu being investigated?

20         A    No, I don't know.

21         Q    When SB complained to you that Ms. Lu

22    was harassing him, did you have a chance to meet

Sydney Lester - February 11, 2021

1    with Ms. Lu to get her side of the story?

2         A    No, I did not meet with her.

3         Q    I'm sorry, what was that?

4         A    I did not meet with her.

5         Q    Okay.

6         A    I don't remember meeting with her.

7         Q    And is there a reason you didn't meet

8    with her on that subject?

9         A    Because -- no, she thought that she

10   should bring it up with HR.

11        Q    And was there a point at which you

12   tried a verbal counseling followed up with a

13   letter documenting that with Ms. Lu to address

14   what SB was complaining about?

15        A    No.  I did not go through that

16   process.  I told him to go to HR to have HR deal

17   with it.

18        Q    And do you know was there an office

19   that you would typically send someone to?  Is

20   there an Office of Human Rights that would

21   typically handle a harassment complaint in your

22   experience?

Sydney Lester - February 11, 2021

```
 1          A     I couldn't say.

 2          Q     What is your understanding of why the

 3   final charge against Ms. Lu was misleading the

 4   mayor rather than it being something like

 5   insubordination or harassment?

 6          A     I don't know if that was the final

 7   charge.  I don't know what kind of charge it is.

 8          Q     Okay, and I don't mean the final

 9   charges in the decision but the final conduct that

10   you charged her with I understand was

11   dishonesty -- intentionally misleading her

12   supervisors or a supervisor; is that right?

13                MR. DANIEL:  Do we need to pull up the

14   exhibits?

15                MR. SCHLEICHER:  Yes.

16                MR. DANIEL:  Do you have the ability

17   to do it on your iPad or do you want me to send

18   them to him?

19                MR. SCHLEICHER:  Let's see.  I'm back

20   on my laptop.

21                (Previously marked Plaintiff's Exhibit

22   No. 5, first referral.)
```

Sydney Lester - February 11, 2021

Page 40

1  BY MR. SCHLEICHER:

2      Q    Okay, Mr. Lester, do you recognize

3  this April 2nd 2019 document that is marked as

4  Plaintiff's Exhibit 5?

5      A    Yes.

6      Q    Is this your proposed discipline,

7  proposed suspension notice to Ms. Lu?

8      A    Yes, it is.

9      Q    I'm trying to -- there we go.

10          Okay, and I see it says, "In this case

11  the charge is false statements." And I'm

12  wondering why you chose to charge her with that

13  rather than, I saw in some of the earlier drafts

14  possibly insubordination or maybe something like

15  harassment?

16      A    Because the combination of what I saw,

17  what was in the -- the description of what was in

18  the report.

19      Q    A more accurate description?

20      A    Yes.

21      Q    And I see here next to where I have it

22  marked as Plaintiff's Deposition Exhibit there is

Sydney Lester - February 11, 2021

1    highlighted the phrase, "This disciplinary action

2    will address only the dishonest statements made by

3    Ms. Lu," and you have underlined and put in bold

4    the word only.  Why did you emphasize that it was

5    only addressing dishonest statements by Ms. Lu?

6         A    Because I wanted her to know that is

7    what the matters were.

8         Q    Is it fair to say that you did not

9    discipline her for stalking or harassing SB and

10   his wife?

11        A    That did not come -- it is not part of

12   it, as I said.  I don't know that I was thinking

13   about anything else in coming to that conclusion.

14        Q    Okay, so only the fact that she was

15   knowingly and willfully reporting false or

16   misleading information or omitting facts to a

17   supervisor?

18        A    Right.

19        Q    If we go down in the document, up in

20   the top left is Page 40 of the overall exhibits, I

21   see that you mentioned that she has filed

22   complaints, made dishonest statements in filing

Sydney Lester - February 11, 2021

1    complaints with D.C. council members and various

2    news media services.  I'm wondering why you chose

3    to mention in here that she had made false

4    complaints to D.C. council members.

5         A    It was just a matter of summarizing

6    all the things that was in the investigative

7    report.  That was there so that's why I made it

8    there.  It was not something that I was stressing.

9    It was a listing of all the issues that was

10   brought up by the report.

11        Q    Okay.

12             So your proposal notice is six pages

13   long and I believe Mr. Lawson had a Report of

14   Investigation that was 30 or more pages long.  So

15   is it fair to say you did not include everything

16   in Mr. Lawson's report in this Notice of Proposed

17   Suspension?

18             MR. DANIEL:  Objection, vague.

19             You can answer.

20             THE WITNESS:  It was vague and I can

21   answer?

22             MR. DANIEL:  You can answer.

Sydney Lester - February 11, 2021

1       Q      I can re-ask it.

2              My question is, is it true that

3       Mr. Lawson's report was so lengthy and detailed

4       that you had to choose what you would and would

5       not include from it when you issued this Notice of

6       Proposed Suspension to Ms. Lu?

7       A      From -- as I recall, I did not have

8       to -- there were some duplications so maybe this

9       is the distillation of all the exhibits that he

10      had in his report.  So I can't say if this is all

11      or is there others that were omitted.

12      Q      Is it fair to say if you included

13      something in this notice then it was something

14      that you considered in reaching your decision?

15      A      The decision was reached based on the

16      combination of everything that was in the report.

17      What I have here is just a sample of what was in

18      the report.

19      Q      Okay, but if it's mentioned in this

20      decision it is something that you relied on as

21      part of the process in proposing discipline; is

22      that right?

Sydney Lester - February 11, 2021

Page 44

```
1          A      Like I say, I didn't rely on -- I
2     relied on the entire report and what the report
3     said.
4          Q      Okay.  Let's look at it this way.
5                 Did you include things in this
6     proposal that you considered irrelevant to your
7     decisionmaking?
8          A      I wouldn't say that it would be
9     irrelevant.  If it was in the report it would be
10    relevant.
11         Q      Okay, and I see there is mention of
12    her contacting CNN and WTOP.  What was it about
13    her contacting those media outlets that you found
14    to be concerning?
15         A      It was in the report.
16         Q      And I saw in Mr. Lawson's
17    investigation there seemed to be a gap between the
18    last witness being interviewed in December and
19    then when he interviewed Ms. Lu in February.  I'm
20    wondering, if she had not gone to the mayor would
21    you still have proposed discipline against her or
22    would the matter have dropped?
```

Sydney Lester - February 11, 2021

1            MR. DANIEL:  Speculative.

2            But you can answer.

3      A     As I said to you, it's the entire

4   report that was presented to me.  I don't know

5   what the time frame is and what space was between

6   incidents.  It's the entire report that I used to

7   arrive at the conclusions.

8      Q     I see on what in the top left says

9   Page 41, under Number 6 of the Douglas factors you

10  say, "Any subsequent lapse should be ground for

11  more serious action including termination."

12            What did you mean by that?

13     A     Any further activities on --

14  continuing.

15            MR. DANIEL:  Did anybody else miss the

16  answer?

17            MR. SCHLEICHER:  Yes.

18            MR. DANIEL:  You want to ask --

19            MR. SCHLEICHER:  Sure, yes.

20  BY MR. SCHLEICHER:

21     Q     I'm going to ask you again to make

22  sure we have a clear record.  Under factor 6 of

Sydney Lester - February 11, 2021

1    the Douglas factors you include the statement

2    that, quote, "Any subsequent lapse should be

3    ground for more serious action including

4    termination."  And I'm wondering what you meant by

5    that.

6         A    Should she continue her activities

7    that she has been doing then that could be grounds

8    for more serious action.

9         Q    Let's see, on Page 40 up in the top

10   left I see down in the second-to-last paragraph

11   you say that Ms. Lu's conduct has been "dishonest

12   and prejudicial to SB and the District

13   government."  I'm wondering in what way did you

14   believe that her conduct had been prejudicial to

15   the District government?

16        A    The District government and the issues

17   that are -- that cause any problem in the records

18   would be a problem and in the service that we

19   render and that would be service by this regard.

20        Q    Was there anyone else that complained

21   to you about the work environment other than SB?

22        A    Other staff would mention things that

Sydney Lester - February 11, 2021

1          Q     Have you read any investigations by

2     Mr. Lawson other than the one dealing with Ms. Lu?

3          A     No.

4          Q     Okay.

5                MR. SCHLEICHER:  Why don't we take a

6     five-minute break and I will see if I have any

7     final questions.

8                MR. DANIEL:  David, I'm going to

9     contact Tiffany Crowe during that period and tell

10    her we will be a little bit behind on the 4

11    o'clock time you gave her.  Are you okay with

12    that?

13               MR. SCHLEICHER:  Yes.

14               MR. DANIEL:  Okay.

15               (Recess taken -- 3:57 p.m.)

16               (After recess -- 4:06 p.m.)

17               MR. DANIEL:  Mr. Lester, you are still

18    under oath, so continue.

19    BY MR. SCHLEICHER:

20         Q     Mr. Lester, did you observe any other

21    employees besides Ms. Lu raise questions about

22    whether or not SB had actually had the daughter

1    that he relied on to claim parental leave?

2         A    No.

3         Q    And is there anything I have asked you

4    that you would like for me to go back and ask

5    again or clarify what I was asking or to clarify

6    your answer to?

7         A    No, not really.  Nothing that I can

8    think of.

9              MR. SCHLEICHER:  Okay.

10             Mr. Daniel, do you have any questions?

11             MR. DANIEL:  Just a couple here.

12             Can we pull back up what we are

13   calling here Exhibit, I think it's your Exhibit 5,

14   is that right, the April -- yes, Exhibit 5, the

15   April 2nd Notice of Proposed Suspension?

16             MR. SCHLEICHER:  Okay.

17                       EXAMINATION

18   BY MR. DANIEL:

19        Q    Mr. Lester, you testified earlier that

20   in drafting this letter you relied on the

21   investigative report.  You can scroll through

22   this.  It lists a number of different exhibits.

Sydney Lester - February 11, 2021

1      Stop there for a second.

2              So it included the -- can you read the

3      second paragraph there, just to yourself, starting

4      with, "in addition."

5          A      Okay, so what is your question?

6          Q      Okay.

7              So you recall in the investigative

8      report that the Office of the Inspector General

9      and the Board of Ethics and Government

10     Accountability had reviewed Ms. Lu's complaints

11     about whether or not SB had a child?

12         A      Yes.  From the report, yes.

13         Q      Do you have any reason to doubt those

14     investigations or that report?

15         A      No.

16         Q      Do you recall there being other

17     similar investigations by both DCRA and DCHR in

18     that report?

19         A      Are there similar investigations in

20     this report?

21         Q      If you don't remember we can keep

22     going through the letter here.

Sydney Lester - February 11, 2021

Page 57

```
1        A     Okay.   I don't remember.

2        Q     So you read the paragraph second from

3    bottom, "Then DCHR."

4        A     Okay, she was told that the

5    qualifications were met by SB.

6        Q     Do you have any reason to doubt that

7    report?

8        A     No.

9        Q     Let's scroll, if you can -- I'm sorry,

10   I don't have control of this.

11            Can you read the second paragraph, or

12   the first full paragraph beginning with,

13   "Finally."

14       A     "DCRA director Melinda Bolling told

15   Ms. Lu that her complaint was investigated and

16   found to have no merit and so DCRA is done with

17   the complaint."

18       Q     Do you have any reason to doubt that

19   conclusion?

20       A     No.

21       Q     Did you rely on those reports in

22   drafting this letter?
```

Sydney Lester - February 11, 2021

Page 58

```
1          A    Yes, I did.

2          Q    All right.

3               MR. DANIEL:  That's all I have.

4               MR. SCHLEICHER:  Okay.  That's all I

5     have got.  Thank you for your time, sir.

6               MR. DANIEL:  We will read and madam

7     court reporter, same address, send us the info and

8     we will get an order back to you as quickly as we

9     can.

10              THE WITNESS:  Thank you very much.

11              (Thereupon, signature having not been

12    waived, the examination of SYDNEY LESTER was

13    concluded at 4:11 p.m.)

14              -      -      -      -      -      -

15

16

17

18

19

20

21

22
```

Sydney Lester - February 11, 2021

Page 59

1    UNITED STATES OF AMERICA )

2    STATE OF MARYLAND        )

3

4           I, CAPPY HALLOCK, the reporter before

5    whom the foregoing deposition was taken, do hereby

6    certify that the witness whose testimony appears

7    in the foregoing deposition was sworn by me; that

8    said deposition is a true record of the testimony

9    given by said witness.

10          I further certify that I am neither

11   counsel for, related to, nor employed by any of

12   the parties to the action in which this deposition

13   was taken; and further that I am not a relative or

14   employee of any attorney or counsel employed by

15   the parties hereto, or financially or otherwise

16   interested in the outcome of this action.

17

18

19

20                      Cappy Hallock, RPR, CRR

21

22   My Commission expires January 19, 2025