Clarence Garret Whitescarver - February 11, 2021

```
 1              UNITED STATES DISTRICT COURT

 2              FOR THE DISTRICT OF COLUMBIA

 3

 4      _____
                                      )
 5      QING LU,                      )
                                      )
 6                  Plaintiff,        )
                                      )
 7          vs.                       )    Civil Action No.
                                      )    1:20-cv-00461-APM
 8      DISTRICT OF COLUMBIA, et al.  )
                                      )
 9                  Defendants.       )
                                      )
10      _____)

11

12

13

14      VIRTUAL DEPOSITION OF CLARENCE GARRET WHITESCARVER

15                  Thursday, February 11, 2021

16                       9:22 a.m.

17

18

19

20

21

22      Reported by:  Cappy Hallock, RPR, CRR
```

1

2             Virtual Deposition of CLARENCE GARRET

3     WHITESCARVER, held via WebEx Remote.

4

5

6             Pursuant to Notice, the Virtual

7     Deposition of CLARENCE GARRET WHITESCARVER was taken

8     commencing at 9:22 a.m. on Thursday, February 11,

9     2021 before Cappy Hallock, Registered Professional

10    Reporter, Certified Realtime Reporter, and Notary

11    Public in and for the State of Maryland.

12

13

14

15

16

17

18

19

20

21

22

Clarence Garret Whitescarver – February 11, 2021

```
1        A P P E A R A N C E S :

2

3            ON BEHALF OF PLAINTIFF:

4                    DAVID R. SCHLEICHER, ESQUIRE

5                    Schleicher Law Firm, PLLC

6                    1629 K Street, NW, Suite 300

7                    Washington, D.C. 20006

8                    202-540-9950

9                    david@gov.law

10

11           ON BEHALF OF DEFENDANTS:

12                   MATTHEW BLECHER, ESQUIRE

13                   Assistant Attorney General

14                   Civil Litigation Division, Section III

15                   Office of the Attorney General for the

16                   District of Columbia

17                   400 6th Street, NW

18                   Washington, D.C. 20001

19                   202-442-9774 (P)   202-730-0586 (F)

20                   matthew.blecher@dc.gov

21                       -and-

22
```

Clarence Garret Whitescarver - February 11, 2021

Page 4

```
1       A P P E A R A N C E S:   (Continued)

2

3              ADAM P. DANIEL, ESQUIRE

4              Assistant Attorney General

5              Civil Litigation Division, Section III

6              Office of the Attorney General of the

7              District of Columbia

8              400 6th Street, NW

9              Washington, D.C. 20001

10             202-442-7272 (P)    202-400-2675 (F)

11             adam.daniel@dc.gov

12

13

14

15

16

17

18

19

20     Also Present:  Luchi Lu

21                    Qing Lu

22     Reporter:  Cappy Hallock, RPR, CRR
```

Clarence Garret Whitescarver - February 11, 2021

```
 1                      I N D E X

 2         Deposition of CLARENCE GARRET WHITESCARVER

 3                    February 11, 2021

 4

 5     EXAMINATION BY:                           PAGE

 6            Mr. Schleicher                       7

 7            Mr. Daniel                          81

 8            Mr. Schleicher                      86

 9                       -oOo-

10

11

12                   E X H I B I T S

13     WHITESCARVER                              PAGE

14     Exhibit 1   Plaintiff's Notice to Defendants   8

15                 and to Tiffany Crowe of her

16                 Intent to Take the Depositions

17                 of Clarence Garret Whitescarver,

18                 Sydney Lester, and Tiffany Crowe

19                 via WebEx

20     Exhibit 2   6-27-19 letter, Whitescarver      40

21                 to Lu, Bates No. 00000142 to

22                 146
```

Clarence Garret Whitescarver — February 11, 2021

```
 1                    E X H I B I T S: (Continued)

 2

 3    WHITESCARVER                                    PAGE

 4    Exhibit 3   Discipline, effective date          46

 5                6-22-16

 6    Exhibit 4   4-30-19 e-mail, L. Lu to Crowe,     49

 7                et al., Bates No. 00000465 to

 8                464

 9    Exhibit 5   4-2-19 letter, Lester to Lu,        59

10                et al.

11    Exhibit 6   5-9-17 letter, Bolling to Lucas     64

12    Exhibit 7   Investigative Report, Bates No.     66

13                00000151 to 182

14

15                        -o0o-

16

17

18

19

20

21

22
```

Clarence Garret Whitescarver - February 11, 2021

```
 1              P R O C E E D I N G S
 2                  - - - - -
 3              MR. SCHLEICHER:  Okay.  All right, we
 4     are ready for the witness to be sworn.
 5     WHEREUPON,
 6              CLARENCE GARRET WHITESCARVER,
 7              A Witness called for examination, having
 8     been first duly sworn, was examined and testified
 9     as follows:
10                  EXAMINATION
11     BY MR. SCHLEICHER:
12        Q    I don't know, Mr. Whitescarver, do you
13     happen to have the pdf file of the exhibits that
14     we are going to use today?
15        A    I can.  If you give me a minute I can
16     probably pull it up, but no, I was told you would
17     be sharing screen.
18        Q    Okay.
19        A    Which would be preferred?
20        Q    I didn't know if you wanted to have it
21     there available to you but I can share the --
22        A    I was going to have it as a backup
```

Clarence Garret Whitescarver — February 11, 2021

1    employees who come to believe that a co-worker

2    engaged in fraud in a work-related matter to

3    report that information?

4              MR. DANIEL:  Objection, form.

5              You can answer.

6        A    Yes.

7        Q    And what is your preferred method for

8    them to go about reporting that information or

9    process for them to use?

10       A    They can either report to their

11   supervisor or to the Inspector General or anyone

12   in the chain of command within DCRA.

13       Q    And do you expect employees in that

14   situation to be certain that what they are

15   reporting is correct before they report it?

16       A    Not necessarily, no.  But, yes, not

17   necessarily.

18       Q    Who do you remember to be the first

19   person to suggest that Ms. Lu's conduct should be

20   investigated?

21       A    I don't have knowledge of that.

22       Q    Who do you remember to be the first

Clarence Garret Whitescarver - February 11, 2021

Page 32

1    person to suggest that Ms. Lu's conduct might be

2    worthy of discipline?

3          A     That I think -- that would have come

4    from the deputy director, Ms. Kwan-Hou.  I mean --

5    yes.

6          Q     And would this have been in early

7    February of 2019?

8          A     Yes.

9          Q     At what point in Ms. Lu's reporting

10   about SB do you believe she went from reporting

11   what she may have been mistaken about to reporting

12   what she knew to be false?

13         A     Somewhere in 2017, I don't have the

14   exact date in front of me, but somewhere in 2017

15   she had a meeting with Walter Crawford and

16   Ingrid -- I have forgotten Ingrid's last name.

17   Johnson, I believe.  I have forgotten Ingrid's

18   last name but she was an HR director.  That

19   meeting, I think, was the turning point as far as

20   I'm concerned as to when she got factual

21   information to act upon to know that going forward

22   that this has been investigated and found not to

Clarence Garret Whitescarver - February 11, 2021

Page 33

1    be accurate.

2         Q    What do you understand to have been

3    communicated in that meeting that put Ms. Lu or

4    should have put her on notice of that?

5         A    My understanding is that HR informed

6    her that they required documentation be provided

7    and that the HR had made a decision that that was

8    a valid paid family leave.

9         Q    And as a general matter is it your

10   expectation that a whistleblower must trust

11   management's direction that the whistleblower's

12   report is false?

13              MR. DANIEL:  Objection, calls for a

14   legal conclusion.

15              You can answer.

16        A    In general I would say -- repeat the

17   question, please.

18        Q    As a general matter do you believe

19   that a whistleblower working for the District must

20   believe management when management tells them the

21   whistleblower's report is false?

22              MR. DANIEL:  Objection, calls for a

Clarence Garret Whitescarver - February 11, 2021

1      legal conclusion and speculation.

2              You can answer.

3      A     No.

4      Q     Do you think Ms. Lu is the only DCRA

5      employee to have ever misled management about

6      something?

7              MR. DANIEL:  Objection, calls for

8      speculation.

9              You can answer.

10     A     No.

11     Q     Can you think of examples of any other

12     employees who were disciplined for misleading

13     management?

14             MR. DANIEL:  Objection, form.

15             You can answer.

16     A     It has been answered, but no.

17     Q     As a general matter would you consider

18     it proper for an employee to use time for which

19     they were receiving paid parental leave to attend

20     a trial?

21             MR. DANIEL:  Objection, form.  Calls

22     for speculation.

```
 1          A     I recall in the exhibit provided in
 2     Mr. Lawson's report that there was an exchange
 3     with Melinda Bolling.  I don't recall immediately
 4     if the investigation was triggered by her.  There
 5     is some e-mail exchange with Melinda Bolling's
 6     name on it.
 7          Q     Did you ever have a chance to discuss
 8     issues related to Ms. Lu with Ms. Bolling?
 9          A     No.
10          Q     Did you have a chance to speak with
11     Mr. Lawson about his investigation of Ms. Lu?
12          A     Yes.
13          Q     And about when did that occur?
14          A     During the 45 days leading up to my
15     final decision.  I don't recall exactly when
16     during that time period.
17          Q     Can you summarize what was discussed
18     with him?
19          A     I don't have a firm recollection of
20     the discussion except to go over some points of
21     his investigation.  I don't recall which ones we
22     went over.
```

Clarence Garret Whitescarver - February 11, 2021

Page 39

1        Q      What is your understanding of why the

2   final charge against Ms. Lu in your decision was

3   essentially misleading the mayor rather than

4   something like insubordination or harassment?

5        A      Because that was essentially the

6   charge that was in the proposal from the

7   supervisor.

8        Q      Did you have a chance to read the

9   proposal from Mr. Lester?

10       A      Yes.

11       Q      I saw that it said that the

12   disciplinary action would address, and then it was

13   bold underlined the word only, and then the

14   dishonest statements by Ms. Lu.  So reading the

15   disciplinary action will address only the

16   dishonest statements by Ms. Lu, I wondered if you

17   knew why Mr. Lester had chosen to emphasize that

18   it was only addressing the dishonest statements by

19   Ms. Lu?

20       A      I don't recall having had a discussion

21   with Lester to find out why he limited it to that.

22       Q      I was wondering what you meant in your

Clarence Garret Whitescarver - February 11, 2021

Page 40

1     decision letter when you said that Ms. Lu's

2     responses indicate she had not fully conceded to

3     the investigations.

4                    MR. DANIEL:  Objection.

5                    David, can you put up the documents

6     that you are referring to?

7                    MR. SCHLEICHER:  Sure.

8                    (Plaintiff's Deposition Exhibit No. 2

9     was marked for identification.)

10    BY MR. SCHLEICHER:

11        Q    Okay I'm looking at in Plaintiff's

12    Deposition Exhibit 2 --

13                   MR. DANIEL:  Can we get this in the

14    record, please?

15                   MR. SCHLEICHER:  Yes.

16        Q    First, Mr. Whitescarver, do you

17    recognize this document that I have on the screen?

18        A    Yes.

19        Q    Okay.

20             Can you see down in the bottom right

21    it is identified as plaintiff deposition exhibits

22    of February 11, 2021, Exhibit 2?

Clarence Garret Whitescarver - February 11, 2021

1        A     Yes.

2        Q     And then the first page up in the top

3    left is numbered 3 as part of the overall exhibits

4    for today?

5        A     Yes, I see that.

6        Q     Okay.

7              Now, I'm going to go down to the

8    second page, and you see I have highlighted in the

9    first paragraph, "Your responses also indicate

10   that you have not fully conceded to the

11   conclusions of the investigations or supervisory

12   direction provided to you in this case."  My

13   question for you is what do you mean by the

14   phrase, "Your responses also indicate that you

15   have not fully conceded to the conclusions of the

16   investigations"?

17       A     What I meant by that statement is that

18   there are recurring instances where the results of

19   the investigation were told to Ms. Lu but she

20   continued with the allegations even after being

21   told that they had no validity.  And so this is

22   just a recount of the fact that she has not seemed

Clarence Garret Whitescarver - February 11, 2021

1    to concede to the fact that her allegations have

2    no validity.

3         Q    And we have talked about management

4    telling her that they conclude there was no basis

5    for her reports.  I'm wondering if you are aware

6    of any document that was shown to Ms. Lu that you

7    believe should have convinced her that there was

8    no basis for her reports?

9         A    I don't have that degree of detail as

10   to how the actions were given to her.

11        Q    And then on this same exhibit, what is

12   in the top left noted as Page 5, these are the

13   Douglas factors, and going down to factor 7,

14   Impact on Agency Reputation/Notoriety, you make

15   mention of her conduct having, "An unacceptable

16   impact toward degrading public confidence in the

17   conduct of the District government and its

18   processes."

19             Do you see that?

20        A    Yes.

21        Q    What did you mean by that phrasing?

22        A    Because the Douglas factors each have

Clarence Garret Whitescarver - February 11, 2021

1    to be addressed as part of the disciplinary

2    action.   This is essentially trying to connect the

3    dots between her actions and any adverse impact

4    that there could be.  So I'm just trying to say

5    that these kind of proffering of illegitimate

6    claims has an adverse impact in degrading public

7    confidence had the public become aware of the

8    adverse nature.

9         Q    Okay.

10             So are you identifying this as a risk

11   rather than there actually was some loss in public

12   confidence as a result of her reports?

13        A    Yes.

14        Q    If Ms. Lu had continued to make

15   reports about SB is it your expectation that she

16   would have ended up being fired?

17             MR. DANIEL:  Objection, calls for

18   speculation.

19             You can answer.

20        A    I would say just the -- just making

21   allegations probably would not result in being

22   fired, but if there was continued workplace

Clarence Garret Whitescarver - February 11, 2021

Page 44

1   harassment and workplace disruption, the potential

2   was there for being fired.

3        Q    And then on the same page we are

4   looking at under Paragraph 11, Mitigating

5   Circumstances, did I understand you correctly

6   there to be saying that since the proposal --

7   since March 27th there were no reported incidents

8   of further misconduct by Ms. Lu?

9        A    I'm sorry, is there a question there?

10        Q    Yes.  What is that March 27th date

11   from?

12        A    I would have to go back and check -- I

13   would have to go back and check.  I'm not sure

14   what it is associated with.  It sounds like the

15   beginning, perhaps the beginning of the

16   disciplinary review, maybe the proposal, but I

17   don't know.  I would have to check.

18        Q    Okay, and what do you understand to

19   have been the most recent incident of misconduct

20   involving Ms. Lu about these matters?

21        A    Without going back through all the

22   documentation, my recollection is that the

Clarence Garret Whitescarver - February 11, 2021

1    misconduct of her communication with the mayor was

2    the last incident.

3         Q    Okay, so something in early February

4    of 2019?

5         A    Again, that's the best of my

6    recollection right now without going back through

7    the documents.

8         Q    Are you generally familiar with the

9    District's personnel manual?

10        A    Yes.

11        Q    And do you understand one of the

12   intents of it to be that employees are treated in

13   a reasonable, fair and consistent manner?

14        A    Yes.

15        Q    And do you believe Ms. Lu's matter was

16   handled that way?

17        A    Yes.

18        Q    Is it your understanding that the

19   District attempts to follow a policy of

20   progressive discipline?

21        A    Yes.

22        Q    And how would you define that term,

Clarence Garret Whitescarver - February 11, 2021

Page 66

```
 1        A     It is reported, first reports,

 2   typically it would go to our HR department within

 3   DCRA.  And then DCHR, D.C. human resources is also

 4   a means of communicating workplace harassment.

 5        Q     And do you know why the decision was

 6   made to have Mr. Lawson investigate these matters

 7   rather than someone else or some other entity?

 8        A     No, I was not involved in triggering

 9   that or being involved in any discussions leading

10   up to triggering that investigation.

11             (Plaintiff Deposition Exhibit No. 7

12   was marked for identification.)

13   BY MR. SCHLEICHER:

14        Q     Looking at this Exhibit 7, do these

15   appear to be excerpts from the Lawson report?

16        A     Yes.

17        Q     And then what is marked as Page 26

18   from his report and marked for our purposes as

19   Page 48 of the overall exhibits, I see a statement

20   in the report that, "Special Investigator Lawson

21   informed Ms. Lu that the first six months of her

22   complaining or even the first year of her
```

Clarence Garret Whitescarver - February 11, 2021

1    complaining might have been reasonable but she has

2    continued her complaining for two and a half

3    years."

4              I'm wondering if you agree with this

5    statement, that the first six months of Ms. Lu's

6    reporting or even the first year of her reporting

7    about SB might have been reasonable?

8              MR. DANIEL:  Objection to form.

9    Vagueness.

10             You can answer.

11        A    I don't particularly disagree with

12   that statement.

13        Q    And what caused Ms. Lu's reporting to

14   be unreasonable?  Did you consider it to be the

15   number of reports, the span of time or something

16   else, or some combination?

17        A    The workplace disruption, workplace

18   harassment continuing unabated is the, by far I

19   would think one of the more triggering aspects to

20   having to take additional action.  It's just to

21   correct the workplace environment.  Had the

22   reports continued outside the Agency and didn't

Clarence Garret Whitescarver - February 11, 2021

1    cause a workplace disruption I doubt it would have

2    risen to needing to take corrective action.

3         Q    Is it surprising to you that the

4    subject of a report of wrongdoing would be upset

5    that they had been reported?

6         A    Restate that, please?

7         Q    I'm wondering if it is surprising to

8    you that the report -- I'm sorry.  I'm wondering

9    if it is surprising to you that the subject of a

10   report of wrongdoing would be upset that they had

11   been reported.

12              MR. DANIEL:  Objection, vague.  Calls

13   for speculation.

14              Can you be more specific about what

15   you're asking, David?

16              MR. SCHLEICHER:  Yes.

17        Q    So we've talked about disruption.  I'm

18   wondering isn't it to be -- in your experience

19   isn't it to be expected that if an employee is

20   reported by another employee as having engaged in

21   wrongdoing that the employee who is reported is

22   going to be upset at that?

Clarence Garret Whitescarver - February 11, 2021

Page 69

```
 1              MR. DANIEL:  Objection, calls for
 2    speculation.
 3              You can answer.
 4    A     Yes.  I would think so.
 5    Q     Okay.
 6              For example, if Ms. Lu reports SB for
 7    an ethics violation, like he admitted to earlier,
 8    isn't it to be expected that SB is going to be
 9    upset that she has made that report?
10              MR. DANIEL:  Objection, calls for
11    speculation.
12              You can answer.
13    A     I would expect that, yes.
14    Q     So even if the report turns out to be
15    true there is going to be some disruption caused
16    by the report having been made.  Is that your
17    experience?
18    A     I would say so, some disruption.
19    Q     I see on the last page of the, before
20    the listing of exhibits in Mr. Lawson's report,
21    Exhibit 7, Mr. Lawson asserts that Ms. Lu knew or
22    reasonably should have known that she was
```

Clarence Garret Whitescarver — February 11, 2021

Page 88

1    send that information and we'll process it as

2    quickly as we can.

3              THE REPORTER:  Thank you very much.

4              MR. SCHLEICHER:  We will see you at

5    noon, 50 minutes from now.

6              (Thereupon, signature having not been

7    waived, the examination of CLARENCE GARRET

8    WHITESCARVER was concluded at 11:10 a.m.)

9              –     –     –     –     –     –

10

11

12

13

14

15

16

17

18

19

20

21

22

Clarence Garret Whitescarver - February 11, 2021

Page 89

1      UNITED STATES OF AMERICA )

2      STATE OF MARYLAND        )

3

4              I, CAPPY HALLOCK, the reporter before

5      whom the foregoing deposition was taken, do hereby

6      certify that the witness whose testimony appears

7      in the foregoing deposition was sworn by me; that

8      said deposition is a true record of the testimony

9      given by said witness.

10             I further certify that I am neither

11     counsel for, related to, nor employed by any of

12     the parties to the action in which this deposition

13     was taken; and further that I am not a relative or

14     employee of any attorney or counsel employed by

15     the parties hereto, or financially or otherwise

16     interested in the outcome of this action.

17

18                          _____

19

20                          Cappy Hallock, RPR, CRR

21     My Commission expires January 19, 2025

22